# UNIVERSITY OF TEXAS AT ARLINGTON, Appellant,

v.

## William BISHOP, Appellee.

### No. 2–98–274–CV.

Court of Appeals of Texas, Fort Worth.

July 15, 1999.

Rehearing Overruled Aug. 19, 1999.

**352**

Dan Morales, Attorney General of Texas, Jorge Vega, First Assistant Attorney General, David A. Talbot, Jr., Deputy Attorney General for Litigation, Nelly R. Herrera, Chief, Tort Litigation Division, and Janine "Red" Balacki, Assistant Attorney General, Austin, Texas, for appellant.

Kelsoe, Anderson, Khoury & Clark, P.C., and Stephen A. Khoury, Dallas, Texas, for appellee.

Panel A: CAYCE, C.J.; DAY and RICHARDS, JJ.

## OPINION

CAYCE, Chief Justice.

The principal question we are asked to decide in this case is whether a private attorney may recover attorney's fees and expenses out of a self-insured state governmental entity's worker's compensation subrogation lien. Because we conclude that a private attorney is entitled to such a recovery, and that the University of Texas at Arlington (UTA) is not entitled to prevail on its other points, we will affirm the judgment of the trial court.

## BACKGROUND

On April 17, 1996, William Bishop, a former UTA employee, was injured in a work-related traffic accident due to the negligence of Don Quoc Dao. As a result of the accident, UTA, a self-insured governmental entity, paid Bishop $25,397 in worker's compensation benefits. Bishop hired attorney Stephen Khoury to pursue a third-party negligence claim against Dao.

Khoury investigated the accident and contacted Dao and his insurance carrier, State Farm Insurance Company, to negotiate a settlement for injuries in excess of those compensated by UTA. State Farm eventually tendered to Khoury $20,000, the entire amount of Dao's insurance policy, to settle Bishop's claim. However, because UTA asserted its entitlement to the proceeds to satisfy its subrogation lien, no settlement was reached.

Ultimately, Bishop filed a negligence action against Dao, joining UTA as a party to the suit. After the suit was filed, Bishop settled all claims against Dao, and State Farm paid Dao's policy limits of $20,000 into the court's registry. Dao was later severed from the suit, leaving the apportionment of the insurance funds between UTA and Bishop as the only issue before the trial court. Bishop then filed a motion requesting the court to apportion the proceeds to provide payment of his attorney's fees and expenses pursuant to section 417.003 of the labor code. UTA moved for summary judgment on the grounds that sovereign immunity shielded it from liability for Bishop's attorney's fees and that the portions of the labor code authorizing the apportionment of private attorney's fees out of a self-insured governmental entity's subrogation lien is unenforceable. Bishop subsequently filed a motion for sanctions alleging that UTA had advanced frivolous arguments in its motion for summary judgment.

After an evidentiary hearing on Bishop's two motions and a hearing on UTA's motion for summary judgment, the trial court entered an order on June 4, 1998, in which it denied UTA's motion for summary judgment and awarded Khoury a fee of $6,660, plus costs, to be paid out of UTA's subrogated interest in the proceeds in the court's registry. Additionally, the court sanctioned UTA in the amount of $3,000.

The order, however, did not identify the conduct that·served as the basis for the sanction.[1] An amended order was signed on June 15 that was substantially the same as the June 4 order.

On June 26, UTA requested findings of fact and conclusions of law. The same day, UTA also filed a motion for new trial and a motion for reconsideration and reversal of the sanctions order. Both motions were denied by written order on July 7.

On August 31, fifty-five days after the written order overruling UTA's motion for new trial, the court amended its sanctions order to describe with particularity the sanctioned conduct and filed findings of fact and conclusions of law.

## APPORTIONMENT OF ATTORNEY'S FEES

In point one, UTA contends the legislature has not clearly and unambiguously waived the immunity of state agencies for suits apportioning attorney's fees in third-party actions. We disagree.

■■■ Sovereign immunity protects the State of Texas, its agencies, and its officials from lawsuits and liability absent clear and unequivocal legislative consent to sue the State.[2] As a branch of the University of Texas System, UTA is a state agency shielded from suit and liability by sovereign immunity unless the legislature unambiguously waives its immunity.[3]

■■■ When determining legislative intent, we look to the language of the statute, legislative history, the nature and object to be obtained, and the consequences that follow alternate constructions.[4] If possible, we are to discern legislative intent from the plain meaning of the words of the statute.[5] We do not, however, interpret statutory language so rigidly "that the almost certain intent of the Legislature is disregarded."[6] Moreover, we will "not decide the scope or meaning of statutory language by a bloodless literalism in which text is viewed as if it had no context."[7] Instead, we avoid statutory interpretations that would produce absurd results[8] and consider each section and word in connection with the entire statute to assess its meaning.[9]

Under the labor code, once an "insurance carrier" pays worker's compensation benefits to a claimant, the carrier is entitled to a subrogation lien against any recovery received from a third-party tortfeasor.[10] Importantly, "insurance carrier" is defined to include "a governmental entity that self-insures, either individually or collectively."[11] Section 417.003 of the labor code provides:

1. See Tex.Civ.Prac. & Rem.Code Ann. § 10.005 (Vernon Supp. 1999) (order imposing sanctions must describe the offending conduct and explain the basis for the sanctions imposed).

2. See *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997).

3. See *Ho v. University of Tex. at Arlington*, 984 S.W.2d 672, 682 (Tex.App.—Amarillo 1998, pet. filed); *see also* Tex.Educ.Code Ann. § 65.02(a)(1) (Vernon 1991).

4. See *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex.1997); *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex. 1991); *see also* Tex. Gov't Code Ann. § 311.023 (Vernon 1998).

5. See *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993).

6. *City of LaPorte v. Barfield*, 898 S.W.2d 288, 292 (Tex.1995).

7. *West Anderson Plaza v. Feyznia*, 876 S.W.2d 528, 532 (Tex.App.—Austin 1994, no writ) (op. on reh'g).

8. See *Sharp*, 815 S.W.2d at 249.

9. See *Sharp v. AMSCO Steel Co.*, 893 S.W.2d 742, 745 (Tex.App.—Austin 1995, writ denied).

10. Tex.Lab.Code Ann. §§ 417.001(b), 417.002(a) (Vernon 1996).

11. *Id.* § 401.011(27)(C) (Vernon 1996).

(a) An *insurance carrier* whose interest is not actively represented by an attorney in a third-party action shall pay a fee to an attorney representing the claimant in the amount agreed on between the attorney and the insurance carrier. In the absence of an agreement, the court shall award to the attorney payable out of the insurance carrier's recovery:

(1) a reasonable fee for recovery of the *insurance carrier's* interest that may not exceed one-third of the *insurance carrier's* recovery; and

(2) a proportionate share of expenses.[12]

■ It is thus evident from the labor code's express definition of "insurance carrier" as a self-insured governmental entity, and the use of that term throughout the code provisions relating to the apportionment of fees and expenses, that the legislature clearly and unambiguously intended self-insured governmental entities such as UTA to pay attorney's fees and expenses out of the entity's subrogation lien.[13] We overrule point one.

### WAS KHOURY IMPERMISSIBLY ACTING AS AN ATTORNEY FOR THE STATE?

■ In its second point, UTA contends that section 417.003 is unconstitutional because only the Attorney General is entitled to act as counsel for the State in the recovery of a subrogation lien.[14] According to UTA, section 417.003 of the labor code impermissibly allows a private attorney to represent the State in collection actions.

■ In analyzing the constitutionality of a statute, we must, if possible, "interpret legislative enactments in a manner to avoid constitutional infirmities."[15] If any provision of the statute is held to be invalid, the invalidity does not affect other provisions that can properly be given effect in the absence of the invalid provisions.[16]

Contrary to UTA's argument, we do not believe section 417.003 authorizes a private attorney to represent the interests of the State nor do we believe the statute interferes with the Attorney General's exclusive constitutional duty to do so. From a plain reading of the statute, it is clear that section 417.003 only addresses the right of a private attorney to be compensated for efforts expended on behalf of a private client in an action against the responsible third party when an "insurance carrier" (such as UTA) benefits from the recovery obtained by the attorney.[17] As our sister court in San Antonio has recently observed, we "fail to see how the assessment

**12.** *Id.* § 417.003(a) (Vernon 1996) (emphasis supplied).

**13.** *See University of Tex. Health Science Ctr. at San Antonio v. Mata & Bordini, Inc.*, No. 04–98–547–CV, slip op. at 7, —— S.W.2d ——, ——, 1999 WL 254166, at *4 (Tex.App.—San Antonio Apr. 30, 1999, no pet. h.); *see also Texas Dep't of Transp. v. Wilson*, 980 S.W.2d 939, 942 (Tex.App.—Fort Worth 1998, pet. denied) (upholding trial court's apportionment of attorney's fees under section 417.003 because "insurance carrier" includes self-insured state agencies).

**14.** *See* TEX. CONST. art. IV, § 22. Section 22 provides:

Sec. 22. The Attorney General ... shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party ... and from time to time, in the name of the State, take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power or demanding or collecting any species of taxes, tolls, freight or wharfage not authorized by law. *Id.*

**15.** *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex.1996); *see also Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 715 (Tex. 1990) (orig.proceeding) (op. on reh'g).

**16.** *See Rose v. Doctors Hosp.*, 801 S.W.2d 841, 844 (Tex.1990) (op. on reh'g); *see also* TEX. GOV'T CODE ANN. § 311.032(c) (Vernon 1998).

**17.** *See State v. Lloyd*, 994 S.W.2d 362, 366 (Tex.App.—Waco, 1999, no pet. h.); *Mata & Bordini*, slip op. at 8, at ——, at *5.

of attorney's fees to a private attorney *after* a third-party action, in which the Attorney General apparently elected not to participate, interferes with the Attorney General's ability to fulfill its constitutional duty to act as counsel for the State." [18] We overrule point two.

## SANCTIONS

■ UTA's remaining points attack the propriety of the trial court's order imposing sanctions. To resolve UTA's challenge to the order assessing sanctions, both parties direct us to the trial court's second amended order dated August 31. However, because fifty-five days had passed since the trial court overruled UTA's motion for new trial by written order on July 7, the trial court was without plenary jurisdiction to modify its earlier sanctions order of June 15.[19] Consequently, the second amended order is void, and we may not consider it.[20] Thus, we will only look to the June 15 order in addressing the remainder of UTA's points.

■ In its third point, UTA contends that the trial court's order is legally deficient because it does not "describe the conduct the court determined violated § 10.001 [of the civil practice and remedies code] and explain the basis for the sanction."

■ Chapter 10 of the civil practice and remedies code allows for sanctions when parties advance frivolous pleadings and motions. Section 10.005 clearly provides that "[a] court *shall* describe in an order imposing a sanction under this chap-ter the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed." [21] The use of the word "shall" in the statute indicates that the requirement for particularity in the sanction order is mandatory.[22]

The court's June 15 order does not state the underlying facts on which the court relied in imposing sanctions, nor does it explain the reasons warranting the monetary sanctions imposed. Instead, the order only generally recites:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff is awarded sanctions against UTA in the amount of $3,000.00 for attorney's fees incurred by the Plaintiff pursuant to § 10.01[sic] et seq. of the Texas Civil Practice and Remedies Code. Accordingly, the clerk of this Court is hereby ordered to disburse and pay the sum of $3,000.00 to Kelsoe, Anderson & Khoury, P.C., as attorneys for the Plaintiff, out of the proceeds of the settlement payment made by Defendant Don Quoc Dao into the registry of this Court. It is further ordered that the said payment shall be disbursed immediately upon the execution of this order.

The order clearly does not meet the specificity requirement of section 10.005. Based on the mandate of section 10.005, we conclude that it was error for the trial court to enter the June 15 sanctions order without describing and explaining the conduct of UTA it relied upon in assessing the sanctions.

---

18. *Mata & Bordini*, slip op. at 8, at ——, at *5.

19. *See* Tex.R.Civ.P. 329b(e). Rule 329b(e) provides:

If a motion for new trial is timely filed by any party, the trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until *thirty days* after all such timely-filed motions are overruled, either by writ-ten and signed order or by operation of law, whichever occurs first.
*Id.* (emphasis supplied).

20. *See Jackson v. Van Winkle*, 660 S.W.2d 807, 808 (Tex.1983).

21. Tex.Civ.Prac. & Rem.Code Ann. § 10.005 (emphasis supplied).

22. *See Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex.1999) (the statutory use of "shall" is construed as mandatory, unless otherwise indicated by legislative intent).

Finding that this omission was error, we must now determine whether it is reversible.[23] In evaluating whether the trial court's omission constitutes reversible error, we note that the trial court did make findings of fact and conclusions of law which describe and explain the sanctionable conduct. The separately filed findings of fact and conclusions of law describe UTA's conduct as follows:

11. Defendant [UTA] made verified statements which misrepresented facts which UTA knew to be false and which facts were proven by documents in UTA's possession.

12. UTA filed claims, defenses and legal contentions in its motions which were not warranted by existing law.

13. UTA made frivolous arguments for reversal of existing law and the establishment of new law.

14. Plaintiff incurred attorneys fees in the amount of $3,000.00 due to inconvenience and the unnecessary defense of Defendant's claims.

While we do not condone the practice of using findings of fact and conclusions of law to satisfy section 10.005, we conclude that the findings and conclusions supplied the particulars lacking in the sanctions order and, thus, the trial court's failure to identify the sanctioned conduct with specificity in its June 15 order did not affect UTA's substantial rights or hinder its presentation of this appeal.[24] Point three is overruled.

▆▆ In its fourth point, UTA asserts that the trial court erred by imposing sanctions against it, as a represented party, because the civil practice and remedies code does not authorize monetary penalties for advancing unwarranted or frivolous arguments.[25] Although UTA correctly states the law, its argument fails because the trial court's findings of fact support the award of monetary sanctions on other grounds.

Section 10.001 of the civil practice and remedies code provides that the signing of the pleading or motion constitutes a certificate that, to the signatory's best knowledge, information and belief, formed after reasonable inquiry:

23. Reversible error in civil cases is governed by appellate rule 44.1, which provides that "[n]o judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of:
  (1) probably caused the rendition of an improper judgment; or
  (2) probably prevented the appellant from properly presenting the case to the court of appeals.
  Tex.R.App.P. 44.1(a).

24. *See* Tex.R.App.P. 44.1(a); *see also Gorman v. Gorman,* 966 S.W.2d 858, 867–68 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (op. on reh'g) (findings of fact supplied the particularities lacking in sanctions order based on Rule 13); *Campos v. Ysleta Gen. Hosp., Inc.,* 879 S.W.2d 67, 70–71 (Tex.App.—El Paso 1994, writ denied) (abating the appeal to allow the trial court to file findings of fact and conclusions of law stating particulars for sanctions order otherwise deficient under Rule 13); *Bloom v. Graham,* 825 S.W.2d 244, 247 (Tex.App.—Fort Worth 1992, writ denied) (trial court's failure to specify good cause

warranting sanctions harmless where record otherwise indicates good cause exists); *Powers v. Palacios,* 771 S.W.2d 716, 719 (Tex. App.—Corpus Christi 1989, writ denied) (sanctions order's failure to comply with the particularity requirement of Rule 13 held harmless where lack of specificity did not cause rendition of improper judgment or prevent presentation of appeal); *but see Friedman & Assocs., P.C. v. Beltline Rd., Ltd.,* 861 S.W.2d 1, 3 (Tex.App.—Dallas 1993, writ dism'd by agr.) (the requirement for particularity in a sanctions order is not satisfied by findings of fact and conclusions of law). Three courts of appeals have reversed a sanctions order lacking the required specificity where there were no findings of fact or conclusions of law. *See Thomas v. Thomas,* 917 S.W.2d 425, 433 (Tex.App.—Waco 1996, no writ); *Kahn v. Garcia,* 816 S.W.2d 131, 133 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding); *Watkins v. Pearson,* 795 S.W.2d 257, 260 (Tex.App.—Houston [14th Dist.] 1990, writ denied).

25. *See* Tex.Civ.Prac. & Rem.Code Ann. § 10.004(d) (Vernon Supp.1999).

(1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.[26]

When a party violates section 10.001, a trial court may impose sanctions, monetary or otherwise, "sufficient to deter repetition of the conduct or comparable conduct by others similarly situated."[27] The trial court's authority, however, is not absolute. One limitation within the statute is that the court "may not award monetary sanctions against a represented party for a violation of Section 10.001(2)," i.e. for advancing a frivolous legal argument.[28]

In the instant case, the trial court did not specify the part of section 10.001 on which it based the sanctions order. Rather, relief was granted "pursuant to § 10.01[sic] et seq." Having reviewed the record, however, we conclude that the sanctioned conduct described by the findings of fact and conclusions of law involves violations of subsections (1), (2), and (3). Thus, the trial court's order, together with the findings of fact and conclusions of law, supports the imposition of sanctions for conduct outside the prohibition of section 10.004(d). We overrule UTA's fourth point.

In points five, six, seven, and eight, UTA argues that the trial court's award of sanctions was error because there is no evidence that it made any misrepresentation of fact under section 10.001(3) or that its claims, defenses, and legal contentions were not warranted by law, and Bishop has not shown that UTA had a "lack of diligence or necessity" in challenging the apportionment action or that he was otherwise entitled to recover attorney's fees for defending against UTA's claims.

■■■ We review a trial court's award of sanctions for an abuse of discretion.[29] To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable.[30] Under an abuse of discretion standard, legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion.[31]

■■■ The party that complains of abuse of discretion has the burden to present a record showing such abuse.[32] Because UTA has failed to bring forth the reporter's record from the hearing on Bishop's motion for sanctions, however, we must presume that sufficient evidence was

**26.** *Id.* § 10.001 (Vernon Supp.1999).

**27.** *Id.* § 10.004(b)–(c).

**28.** *Id.* § 10.004(d).

**29.** *See Koslow's v. Mackie,* 796 S.W.2d 700, 704 (Tex.1990).

**30.** *See Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

**31.** *See Beaumont Bank v. Buller,* 806 S.W.2d 223, 226 (Tex.1991); *Texas Dep't of Health v. Buckner,* 950 S.W.2d 216, 218 (Tex.App.— Fort Worth 1997, no writ).

**32.** *See Simon v. York Crane & Rigging Co.,* 739 S.W.2d 793, 795 (Tex.1987).

introduced to support the trial court's findings and the judgment based on them.[33] Accordingly, we overrule points five through eight.

## CONCLUSION

We overrule all of UTA's points and affirm the judgment of the trial court.

---

**33.** *See Bryant v. United Shortline Inc. Assur.* *Servs., N.A.,* 972 S.W.2d 26, 31 (Tex.1998).