NUMBER 13-02-545-CV

COURT OF APPEALS
 
THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG




LOUIS YOUNTS AND YVONNE YOUNTS                                 Appellants,

v.

FIRST PROSPERITY BANK F/K/A COMMERCIAL NATIONAL 
BANK OF BEEVILLE AND JOE L. CARTER                                   Appellees.




On Appeal from the 156th District Court
Bee County, Texas.




MEMORANDUM OPINION

Before Justices Hinojosa, Yañez and Castillo
Memorandum Opinion by Justice Castillo

          This is an appeal from a sanctions order arising out of a breach of oral contract
case. Appellants Louis and Yvonne Younts (together "the Yountses") sued appellees First
Prosperity Bank and the bank's senior vice-president, Joe L. Carter, for breach of oral
contract for services performed. The Yountses appeal from an order granting sanctions
to Carter and Prosperity Bank. We reverse and render. 
I. Background
          Carter hired the Yountses to undertake work on property owned by the estate of
Sarah Hall, deceased. A disagreement arose as to the manner of performance and later,
as to the value of the services. The Yountses filed suit against Prosperity Bank and Carter. 
Counsel for Prosperity Bank and Carter included a verified denial in their answer stating
that they had been sued in the wrong capacity because Prosperity Bank and Carter were
"agents of a disclosed principal." The Yountses did not amend their petition at that time. 
Prosperity Bank and Carter eventually moved for summary judgment as to the claims
against Carter. Carter obtained a summary judgment in his favor and then moved for the
imposition of sanctions. The trial court granted the motion and awarded Carter $1,000.00
in fees and expenses. 
          The Yountses thereafter amended their petition, dismissing Carter as a defendant. 
The remainder of the case, the suit against Prosperity Bank, was set for trial in January
2002. Prosperity Bank then moved for summary judgment on the claim against it. Before
the motion was submitted, and two days after the deadline for filing any response to
Prosperity Bank's motion, the Yountses filed a nonsuit. Prosperity Bank moved for
sanctions, which the trial court granted in the amount of $11,933.00 following an
evidentiary hearing. The trial court incorporated the earlier sanctions in favor of Carter in
that order, making the total amount of sanctions $12,933.00. It is from that judgment,
including sanctions in favor of Carter and Prosperity Bank, that the Yountses appeal.
 
II. Issues on Appeal
          By three issues, the Yountses assert that the trial court abused its discretion in: (1)
imposing severe sanctions; (2) granting Prosperity Bank's motion for sanctions based on
alleged frivolous pleadings when the Yountses relied on discovery responses; and, (3) 
awarding attorney fees when Prosperity Bank did not seek fees. 
A. Presumptions and Burdens of Proof in Sanctions Motions
          In the final order, the trial court found Louis and Yvonne Younts joint and severally
liable, along with their counsel of record, for $11,933.00 in attorney fees and expenses in
favor of Prosperity Bank, and $1,000.00 in favor of Carter. The Yountses alone have
appealed that judgment.


 The trial court based the award of sanctions on chapter 10 of
the Texas Civil Practice and Remedies Code and rule 13 of the Texas Rules of Civil
Procedure. 
          Rule 13 provides that a party may seek sanctions against a party or counsel, or
both, if the court determines any pleading or motion is groundless and brought either in
bad faith or for the purpose of harassment. Tex. R. Civ. P. 13.


 Courts presume that
pleadings and other papers are filed in good faith. GTE Communications Sys. Corp. v.
Tanner, 856 S.W.2d 725, 730 (Tex. 1993) (orig. proceeding). The party seeking sanctions
bears the burden of overcoming the presumption of good faith in the filing of pleadings. 
Id. at 731. 
          Section 10 of the civil practice and remedies code also allows for the imposition of
sanctions against parties and/or their counsel for asserting claims or defenses or factual
contentions that have no evidentiary support. Tex. Civ. Prac. & Rem. Code Ann. § 10.001
(Vernon 2002).


 In determining if sanctions are proper, the trial court must examine the
circumstances existing when the litigant filed the pleading. See Griffin Indus. v. Grimes,
No. 04-02-00430-CV, 2003 Tex. App. LEXIS 3439, at *11-*12 (Tex. App.–San Antonio,
Apr. 23, 2003, no pet.) (applying good-faith presumption to chapter 10); see also Home
Owners Funding Corp. of Am. v. Scheppler, 815 S.W.2d 884, 889 (Tex. App.–Corpus
Christi 1991, no writ) (applying good-faith presumption to rule 13); Neely v. Comm. for
Lawyer Discipline, 976 S.W.2d 824, 828 (Tex. App.–Houston [1st Dist.] 1998, no pet.). 
          The trial court must hold an evidentiary hearing to make the necessary factual
determinations about the motives and credibility of the person signing the groundless
petition. Neely, 976 S.W.2d at 828. Evidence must be admitted in compliance with the
rules of evidence at the evidentiary hearing for a trial court to consider it in a rule 13
context. Alejandro v. Robstown Indep. Sch. Dist., 131 S.W.3d 663, 670 (Tex.
App.–Corpus Christi 2004, no pet.); Alejandro v. Bell, 84 S.W.3d 383, 392 (Tex.
App.–Corpus Christi 2002, no pet.). 
          The due process clause, as applied to sanctions, requires that there be a
reasonable relationship between the harm done and the sanctions assessed. Ins. Corp.
of Ireland, Ltd. v. Compagnie Des Bauxites de Guinea, 456 U.S. 694, 707 (1982). The lack
of some reasonable relationship between the harm and the sanction assessed constitutes
an abuse of discretion. Transamerican Natural Gas Co. v. Powell, 811 S.W.2d 913, 917
(Tex. 1991) (per curiam). Whether the sanctions imposed are just is measured by two
standards: (1) a direct relationship between the offensive conduct and the sanctions
imposed; and (2) just sanctions must not be excessive–the punishment must fit the crime. 
Id. The authority for a district court to impose sanctions should be exercised cautiously
and judiciously. Braden v. Downey, 811 S.W.2d 922, 930 (Tex. 1991); Glass v. Glass, 826
S.W.2d 683, 688-89 (Tex. App.–Texarkana 1992, writ denied).
          Chapter 10 provides that the trial court "shall" describe both the conduct and the
basis for its sanctions in its order. Tex. Civ. Prac. & Rem. Code Ann. §10.005 (Vernon
2002); Rudisell v. Paquette, 89 S.W.3d 233, 238 (Tex. App.–Corpus Christi 2002, no pet.);
GTE Communications Sys. Corp. v. Curry, 819 S.W.2d 652, 654 (Tex. App.–San Antonio
1991, no writ). The use of the word "shall" in the statute indicates that the requirement for
particularity in the sanction order is mandatory. Univ. of Tex. at Arlington v. Bishop, 997
S.W.2d 350, 355 (Tex. App.–Fort Worth 1999, pet. denied). Similarly, rule 13 imposes a
duty on the trial court to point out with particularity the acts or omissions on which
sanctions are based. Mattly v. Spiegel, Inc., 19 S.W.3d 890, 895 (Tex. App.–Houston
[14th Dist.] 2000, no pet.). 
          The trial court considers the acts or omissions of the represented party or counsel,
not merely the legal merit of a pleading or motion. Grimes, 2003 Tex. App. LEXIS 3439,
at *11;  N.Y. Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co., 856 S.W.2d 194, 205
(Tex. App.–Dallas 1993, no writ). A party should not be punished for counsel's conduct
unless the party is implicated apart from having entrusted its legal representation to
counsel. Glass, 826 S.W.2d at 687 (citing Powell, 811 S.W.2d at 917). The trial court
must at least attempt to determine whether the offensive conduct is attributable to counsel
only, or to the party only, or to both. Powell, 811 S.W.2d at 917.B. Standards of Review
          Imposing an available sanction is left to the sound discretion of the
trial court.  Koslow's v. Mackie, 796 S.W.2d 700, 704 (Tex. 1990); Rudisell, 89 S.W.3d at
236. We may not substitute our judgment for the trial court's. Davis v. Huey, 571 S.W.2d
859, 862 (Tex. 1978). The test for determining if the trial court abused its discretion is
whether it acted without reference to any guiding rules and principles to the extent the act
was arbitrary or unreasonable. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238,
241-42 (Tex. 1985); Bell, 84 S.W.3d at 392. A trial court abuses its discretion in imposing
sanctions only if it bases its order on an incorrect view of the law or an erroneous
assessment of the evidence. Randolph v. Jackson Walker, L.L.P., 29 S.W.3d 271, 276
(Tex. App.–Houston [14th Dist.] 2000, pet. denied). A party attacking a trial court's
decision as an abuse of discretion carries a heavy burden. Johnson v. Fourth Court of
Appeals, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding). 
          We review a trial court's award of sanctions under the abuse of discretion standard.
See Kutch v. Del Mar College, 831 S.W.2d 506, 508 (Tex. App.–Corpus Christi 1992, no
writ). Our scope of review is the entire record that was before the trial court. See id. at
512. We review the conflicting evidence in the light most favorable to the trial court's
ruling, and draw all reasonable inferences in favor of the court's judgment. See id.III. The Trial Court's Discretion to Sanction The trial court imposed sanctions on the parties and their counsel, jointly and
severally. In their first issue, the Yountses maintain that the trial court abused its discretion
in granting the motions for sanctions which asserted they maintained a frivolous lawsuit
and signed frivolous pleadings. 
 
A. Sanctions in Favor of Carter
          In his motion, Carter requested sanctions on grounds that the claim against him was
frivolous. At the hearing, Carter's counsel argued that the lawsuit was groundless and
brought for the purpose of harassment under rule13 and chapter 10. Carter testified that
he contracted verbally with Mr. Younts to perform mowing work on certain Hall Estate
property. Carter testified that he made clear to the Yountses or their attorney that he was
not acting in his personal capacity for purposes of the contract. 
           Carter's attorney testified he was counsel of record, attempted to settle the case,
filed Carter's summary-judgment motion, participated in discovery, and requested that the
Yountses' attorney dismiss Carter from the lawsuit to avoid the filing of a summary-judgment motion. The trial court admitted in evidence an excerpt of Mr. Younts' deposition. 
 The deposition excerpt shows that Mr. Younts: (1) understood he worked for Carter and
the bank; (2) sued Carter "because he hired me to do the work;" (3) understood that the
property belonged to the Hall Estate; (4) sued Carter because he was representing the
Halls; (5) was not going to dismiss Carter from the lawsuit because the Yountses were not
working for anybody else; (6) admitted that, before filing the lawsuit, knew that Carter was
involved in his official position as a representative of the bank; and (7) admitted that no one
hid from him that the work was for the Hall Estate or told him that the work was for the
"bank, personally, or Mr. Carter, personally." The trial court admitted in evidence demand
letters from the Yountses' counsel and letters from Carter's counsel addressing lack of
capacity. Carter's attorney also testified about attorney fees.


 Granting the motion for
sanctions, the trial court stated:
It seems, however, that it might have been appropriate at least initially to
bring him into the case. That happens very often in lawsuits. You take the
shotgun approach, figure out who to sue, sue everybody you can sue, figure
out who belongs to you and then dismiss them as appropriate. It would
appear to me that after the taking of the deposition of Mr. Carter and Mr.
Younts, in particular in February, that a nonsuit in this case would have been
the better part of valor. Therefore, it does appear that after that time this
case in my view was basically groundless as to Mr. Carter individually. The
necessity for filing a motion for summary judgment was something that cost
that probably should not have been incurred nor should it have been
necessary. Therefore it would not have been necessary to go forward with
his request for sanctions. I'll award a fee or sanctions in the sum of $1,000
to be paid by the Plaintiffs in this cause of action in this matter. 
 
The trial court assessed the sanction as costs and confirmed and incorporated it as a part
of the final order. The final order invokes both rule 13 and chapter 10. However, in the
context of the $1,000.00 sanction, the order cites only rule 13 and not chapter 10. When
an order of sanctions refers to one specific rule, either by citing the rule, tracking its
language or both, we are confined to determining whether sanctions are appropriate under
that particular rule. Finlay v. Olive, 77 S.W.3d 520, 524 (Tex. App.–Houston [1st Dist.]
2002, no pet.). Thus, we review the order for abuse of discretion under rule 13 and not
chapter 10. 
          The trial court's order memorializing the sanction contained its findings: 
3. In every prior instance that Carter engaged Mr. Younts' services he
was clearly, openly and unequivocally acting on behalf of the Bank as an
officer of that institution, which in turn was acting as the executor of the
estate in question. At his oral deposition, Mr. Younts acknowledged his full
understanding that Carter was an agent acting on behalf of the Hall Estate,
and was not going to pay personally for Plaintiffs' services. Accordingly,
Carter had no personal liability to Plaintiffs and Plaintiffs' suit as to Mr. Carter
was groundless. Tex. R. Civ. P. 13.
 
4. This court granted Carter's Motion for Summary Judgment. 
Plaintiffs' refusal to dismiss Mr. Carter caused Carter to incur unnecessary
legal expense in this matter, which demonstrates malice and that the suit, as
to Carter, was brought for the purpose of harassment as defined under Tex.
R. Civ. P. 13. Mr. Carter's fees have been paid by the Bank. The court
awarded $1000.00 in fees and expenses as sanctions, to abide the final
judgment in this case. Said amount shall be confirmed and incorporated as
a part of this final Order.

The order awarded Carter and Prosperity Bank, jointly, the sum of $1,000.00 as attorney
fees and expenses for defending the suit as to Carter, against the Yountses and their
attorney, jointly and severally.
          Rule 13 defines "groundless" as having "no basis in law or fact and not warranted
by good faith argument for the extension, modification, or reversal of existing law." 
Rudisell, 89 S.W.3d at 237. In determining whether sanctions are appropriate, the trial
court must examine the facts available to the litigant and the circumstances existing when
the litigant filed the pleading. Id. The rule further dictates that "[n]o sanctions under this
rule may be imposed except for good cause, the particulars of which must be stated in the
sanction order." Tex. R. Civ. P. 13; see Rudisell, 89 S.W.3d at 237. In order for a trial
court to act within its discretion to impose rule 13 sanctions, it must state with particularity
good cause for finding that the pleadings upon which the sanctions are based were
groundless and brought in bad faith or for purposes of harassment. Id.
          In reviewing an award of sanctions, we ordinarily look to the particulars of good
cause set out in the sanction order. Id. This particularity requirement serves several
important purposes: (1) it ensures that the trial court is held accountable and adheres to
the standard of the rule; (2) it requires the trial court to reflect carefully on its order before
imposing sanctions; (3) it informs the offending party of the particular conduct warranting
sanctions for the purpose of deterring similar conduct in the future; and (4) it enables the
appellate court to review the order in light of the particular findings made by the trial court. 
Id.
          In this case, the record reflects that the trial court considered the evidence
presented at the evidentiary hearing. The trial court's order states facts or particulars in
support of its decision to impose sanctions. While it does state that the lawsuit against
Carter in his individual capacity was groundless and brought to harass, the order makes
no distinction between the conduct of the Yountses and the conduct of their attorney. The
trial court found that Mr. Younts acknowledged his understanding that Carter was an agent
for the Hall Estate and was not going to pay personally for the services. When determining
whether sanctions are appropriate, the trial court must examine the facts available to the
litigant and the circumstances existing when the litigant filed the pleading. Neely, 976
S.W.2d at 828. Rule 13 requires sanctions based on the acts or omissions of the
represented party or counsel, and not merely on the legal merit of the pleading. Id. 
          The trial court's findings do not show that the Yountses did anything other than what
their attorney did on their behalf. The Yountses did not sign the pleadings. While Mr.
Younts acknowledged that Carter would not personally pay for the services and that he
would not dismiss Carter from the lawsuit, the evidence does not establish that Mr. Younts
understood that he sued Carter in the wrong capacity or that he had control over the
allegations in the pleading. Carter adduced no evidence regarding the conduct or
knowledge of Mrs. Younts regarding the lawsuit. We conclude that Carter has not
overcome the presumption that pleadings are filed in good faith. Tanner, 856 S.W.2d at
731. We further conclude that the record does not demonstrate that the Yountses are
culpable for the acts of their attorney. The sanction imposed is for the conduct of counsel. 
Because a party should not be punished for counsel's conduct unless the party is
implicated apart from having entrusted its legal representation to counsel, we conclude that
the trial court abused its discretion in assessing sanctions against the Yountses for the
conduct of their counsel. See Glass, 826 S.W.3d at 687-88. 
B. Sanctions in Favor of Prosperity Bank
          In its motion for sanctions, Prosperity Bank requested sanctions asserting that the
Yountses and their attorney maintained the lawsuit against the bank although they knew
the Sarah Hall Estate was the proper entity. At the evidentiary hearing, Carter testified that
he disclosed his title and position to Mr. Younts, who performed land clearing services at
Carter's request. Carter had previously hired Mr. Younts to perform work for the Yoward
Estate and the Sarah Hall Estate, having paid Mr. Younts between sixty and seventy-five
thousand dollars. Carter testified there were no prior disputes with the bills. When the
Yountses billed $9,330.00 for the work performed on the estate, Carter did not believe it
was a fair amount. He apprised Mr. Younts but was unable to reach a resolution. After
settlement negotiations failed, Carter received a demand letter from Mr. Younts' attorney
requesting payment in full. Carter testified he was sued in his individual capacity, although
he had disclosed that he was the independent executor of the Hall Estate. The bank was
sued in its corporate capacity. Carter further testified that, during his deposition, he
disclosed that he was acting as an officer of the bank and not in his individual capacity
when he ordered services for the Hall Estate. Carter agreed that the total amount of
attorney fees and expenses to defend the suit totaled $12,173.00. 
          On cross-examination, Carter testified he negotiated with Mr. Younts on the Hall
Estate in his capacity as executor. Carter did not recall whether he advised Mr. Younts that
the Hall Estate was a joint tenant on the property Mr. Younts serviced. However, Carter
testified, Mr. Younts "knew that the Sarah Hall Estate was a joint tenant in the property." 
Carter did not recall whether he disclosed the amount of the interest to Mr. Younts. Carter
admitted: (1) the Hall Estate had a one-third undivided interest in the property serviced
and that he represented only that interest in the property; (2) Prosperity Bank represented
only one-third of the Hall Estate and the remaining two-thirds of the estate was owned by
individuals named in the Yountses' disclosures;


 (3) Prosperity Bank's disclosures showed
that, "[a]t this time, Defendants believe that all entities and individuals who should be
named as parties Defendants have been named in this suit;" and (4) attorney fees in the
case were accounted for in the Hall Estate, "while we're in that capacity." 
          On re-direct examination, Carter testified that his disclosures showed "[t]here is a
defect of parties, Defendant, and these Defendants are not liable in the capacity in which
they are sued." He testified that Prosperity Bank was acting in its capacity as executor of
the estate and that other Hall family members with an interest in the estate had delegated
to Prosperity Bank the clearing of the property. He admitted that Prosperity Bank was a
party except in the wrong capacity. Carter expected that the Yountses' attorney was going
to amend the lawsuit and name Prosperity Bank in its correct capacity. He admitted that
Prosperity Bank paid for attorney fees in this case and charged it to the estate. 
          Prosperity Bank's attorney testified about his attempts to settle the case with the
Yountses' attorney and the work performed in the bank's defense. He testified that the
bank managed the property for all of the joint tenants and that it was the proper party as
long as it was sued in the correct capacity. He testified that he billed reasonable,
customary, and necessary attorney fees and costs in defending the suit, totaling
$12,173.00. Counsel admitted that in the response to requests for disclosure, he
answered, "[a]t this time, Defendant believes that all entities and individuals who should
be named as party's [sic] Defendant have been included in the suit." He explained that the
answer was correct because "there was no need, no necessity whatsoever, for joining the
joint tenants in the land in order to recover" on the claim. He testified, "The Bank was a
party to the lawsuit. It was sued in the wrong capacity." When asked if he needed to
supplement this disclosure, counsel testified, "[N]o, sir, because they were correct. They
were and are correct." Counsel added that the disclosure also showed the defect of
parties. As to payment of his fees, he testified that the bank was his client and if the bank
"charges it back to the estate, that's their business, not mine." He admitted that the
Yountses' counsel asked him to agree to allow him to amend the pleadings after the
summary-judgment motion was filed and he refused. 
          The Yountses' counsel testified that Carter contacted his client to perform work and
the bank had always paid for the work done.


 He testified that Carter watched the
progression of the work, monitored it, and told the Yountses when they were finished. 
Counsel testified that, according to custom and practice, the Yountses sent Carter an
invoice and Carter requested a detailed invoice. The Yountses complied. Carter refused
to pay the bill. The Yountses requested a meeting with the bank president and Carter. 
Counsel testified that Carter told the Yountses that he would pay approximately one-third
the value of the work performed and the Yountses refused. Counsel sent collection letters. 
          The Yountses' counsel further testified that Carter told him personally that the matter
must be presented to a trust committee and requested time to evaluate payment. Counsel
testified that the amount in question was $9,330.00. The Yountses' counsel admitted that
the bank's counsel did attempt to settle the claim after the lawsuit was filed but the
Yountses refused the offer "and stated that they had performed the work and were entitled
to be paid." The Yountses' counsel testified he relied on the bank's disclosure that "[a]t this
time, Defendants believe that all entities and individuals who should be named as parties
Defendants have been included in this suit." The disclosure was not supplemented. When
the bank filed the summary-judgment motion, he investigated and learned that the estate
owned only a one-third interest and the other two-thirds' interest was in Rio Entertainment,
Inc., and the Gladys Hall Estate. Counsel added, "So it was my perception that the bank
had fraudulently misrepresented the ownership in the property to my client, that there were
effectively additional parties that should have been included in this suit." He contacted the
bank's counsel in an effort to protect his clients and "reel in the parties." Counsel for the
Yountses informed the bank's counsel that, after evaluation of the estate, he learned that
the bank only represented a one-third interest and that other parties should be part of the
suit. The bank's counsel did not agree to set aside the summary-judgment motion, and so,
the Yountses' counsel filed the non-suit. On cross-examination, counsel admitted that he
investigated the ownership of the land after Carter filed his summary-judgment motion. 
The Yountses' counsel agreed that, in his response to the motion, he indicated "The Bank
is the Executor of the will of the Sarah Hall Estate." 
          The trial court granted the bank's motion for sanctions. The trial court's order
granting sanctions in favor of Prosperity Bank states, in relevant part: 
3. The Bank, is in turn, the agent of a disclosed principal, that is, the
Estate of Sarah Hall, Deceased. It is uncontroverted that Plaintiffs knew
these facts before they filed suit. These facts are also established by the
Affidavit of Joe L. Carter with attached deposition excerpts and documentary
exhibits. The Bank filed its verified pleading under Tex. R. Civ. P. 93 that it
is not liable in the capacity in which it has been sued. This sworn pleading
was never traversed, yet Plaintiffs persisted in maintaining the suit against
the Bank in an incorrect capacity. Plaintiffs' suit as to Prosperity Bank, for
its own account, was groundless. Tex. R. Civ. P. 13. . . . 

 
6. Plaintiffs and their counsel insisted on maintaining the suit, even
though it is evident they knew all along they had sued the wrong parties. The
Bank was forced to incur substantial attorney's fees to defend a suit in which
it was uncontrovertibly not liable in the capacity in which it was sued. Faced
with an insurmountable motion for summary judgment, Plaintiffs simply non-suited the case. The damage and expense they have caused was
substantial. The Bank has been forced to incur legal fees and expenses in
excess of $10,000 in defending this suit, which only involved about $10,000
(plus interest and fees sought) in the first place. The suit was frivolous under
Tex. R. Civ. P. 13 and brought for the purpose of harassment, Tex. Civ.
Prac. & Rem. Code ch. 10 §§10.001 et seq. warranting the imposition of
sanctions as allowed by §10.004(c)(3). 
 
8. The court finds that of the fees and expenses incurred by the Bank
in the sum of $11,933.00 is reasonable reimbursement as a sanction against
Plaintiffs and their counsel for frivolously maintaining a suit which lacked
merit and as to which, they knew Defendants lacked liability. 

The order assessed the sanctions jointly and severally against the Yountses and their
attorney. The order invoked both rule 13 and chapter 10. Thus, we review the order for
abuse of discretion under both.
1. Rule 13
          We have already concluded that the evidence adduced at the hearing on Carter's
motion pointed to the conduct of the Yountses' counsel. Similarly, the evidence before the
trial court at the hearing on Prosperity Bank's motion does not overcome the good faith
presumption in rule 13. The complained of conduct was not that of the Yountses. The
evidence does not establish that the Yountses signed or filed the lawsuit or that they sued
Prosperity Bank in the wrong capacity. The trial court's findings do not show that the
Yountses did anything other than what their attorney did on their behalf. We conclude that
Prosperity Bank has not overcome the presumption that pleadings are filed in good faith. 
Tanner, 856 S.W.2d at 731. We further conclude that the evidence does not demonstrate
that the Yountses are culpable for the conduct of counsel. The sanction imposed was for
the conduct of counsel. Because a party should not be punished for counsel's conduct
unless the party is implicated apart from having entrusted its legal representation to
counsel, we conclude that the trial court abused its discretion in assessing sanctions
against the Yountses for the conduct of their counsel. See Glass, 826 S.W.3d at 687-88. 2. Chapter 10
          A court may punish violations of chapter 10 by imposing sanctions on the person,
the party represented by the person, or both, who has signed the pleading or motion in
violation of section 10.001. Tex. Civ. Prac. & Rem. Code Ann. § 10.004(a) (Vernon 2002). 
The trial court must specifically detail the sanctionable conduct in its order and explain the
basis for the sanction imposed. Tex. Civ. Prac. & Rem. Code Ann. § 10.005 (Vernon
2002); Rudisell, 89 S.W.3d at 238. 
           The record reflects that the trial court considered the evidence presented at the
evidentiary hearing. The Yountses did not testify. Their attorney did, explaining the
reasons he opined the lawsuit had merit. The trial court's order, however, awards
sanctions against the Yountses and their counsel "for frivolously maintaining a suit which
lacked merit and as to which, they knew Defendant lacked liability." The order does refer
to chapter 10. However, the order does not state which section in chapter 10 applies.


 
           Section 10.001 states that the signing of a pleading constitutes a certificate by the
signatory that to the signatory's best knowledge, information, and belief, formed after
reasonable inquiry, in general, have factual support. Tex. Civ. Prac. & Rem. Code Ann.
§10.001(3) (Vernon 2002). The finding that the Yountses frivolously maintained a suit
which lacked merit is not supported by the record. The Yountses did not sign the pleading. 
Tex. Civ. Prac. & Rem. Code Ann. §10.001 (Vernon 2002). The order states that it is
uncontroverted that the Yountses knew that the bank was the agent of a disclosed
principal. However, the evidence does not establish that the Yountses knew that
Prosperity Bank was the agent of a disclosed principal, the Hall Estate.


 
          We conclude that the assertions in the trial court's order against the Yountses are
either too vague, not supported by the evidence produced at the evidentiary hearing, or
constitute actions that were taken by the Yountses' counsel. Despite the requirement in
chapter 10 that details of the sanctionable conduct must be stated if a finding in favor of
sanctions is to be sustained, we find no evidence of such conduct by the Yountses in the
testimony adduced at the hearing or cited in the order. Thus, we conclude that the trial
court abused its discretion in imposing sanctions against the Yountses, jointly and
severally, by basing its order on a clearly erroneous assessment of the evidence. See
Monroe v. Grider, 884 S.W.2d 811, 816 (Tex. App.–Dallas 1994, writ denied).
          We further conclude that the findings in the sanctions order in this case are not
supported by the record. See Tex. Civ. Prac. & Rem. Code Ann. § 10.005 (Vernon 2002);
Rudisell, 89 S.W.3d at 238. The trial court's order does not describe the conduct that
violates section 10.001, nor does it describe the reasons warranting the sanctions imposed
against the Yountses. See Rudisell, 89 S.W.3d at 238. Thus, we also conclude that the
trial court abused its discretion by entering a sanction order where the evidence
establishes the parties did not sign the pleading and the conduct under scrutiny was that
of their counsel. Id.
          The harm to the Yountses is patent. Carter hired them to clear land.


 The Yountses
charged $9,330.00 for work performed. Carter disputed the bill. The lawsuit that ensued
resulted in no remuneration for the work performed but in an award of sanctions against
them in excess of the amount of their services. We conclude that the Yountses suffered
harm in the form of a $12,933.00 sanctions award. Tex. R. App. P. 44.1(a)(1), (2). 
IV. CONCLUSION
          We sustain the Yountses' first issue. We reverse the trial court's order granting
sanctions in favor of Carter and Prosperity Bank and against the Yountses, jointly and
severally, and render that Carter and Prosperity Bank take nothing by the Yountses. 
Because our resolution of the issue is dispositive, we do not reach the remaining issues. 
See Tex. R. App. P. 47.1
 
 
                                                                                      ERRLINDA CASTILLO
                                                                                      Justice
Memorandum Opinion delivered and 
filed this 17th day of March, 2005.