

NUMBER 13-13-00401-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOHN KLEAS CO. INC., **Appellant,**

v.

MICHAEL PROKOP, DAVID A. CARP
AND HERZOG & CARP, P.C., **Appellees.**

**On appeal from the 423rd District Court
of Bastrop County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Garza**

Appellant John Kleas Co., Inc. ("Kleas") challenges the trial court's summary judgment and its award of attorney's fees as sanctions in favor of appellees, Michael Prokop, David A. Carp, and Herzog & Carp, P.C. By five issues, Kleas contends that: (1) the trial court erred by denying its motion to continue a hearing on appellees' summary

judgment motions; (2) Kleas produced an affidavit which defeated appellees' summary judgment motions; (3) the sanctions order contained insufficient findings of fact; (4) the order incorrectly concluded that all of Kleas's causes of actions were groundless and filed in bad faith; and (5) the award of sanctions was excessive. We affirm.[1]

## I. BACKGROUND

On July 11, 2008, Kleas purchased eight acres of property in Bastrop, Texas, from Lena Ruth Prokop-Purcell. Prokop-Purcell provided part of the financing for the sale, obtaining a promissory note for $303,160.17 and a second lien on the property. The remainder of the financing was provided by a bank which obtained the primary lien on the property. Three months later, in October of 2008, Kleas purchased additional acreage from Prokop-Purcell; again, the sale was partly owner-financed, with Prokop-Purcell taking a $150,000 promissory note and a second lien. Under both promissory notes, Kleas owed four quarterly payments and a balloon payment. Later in October of 2008, Prokop-Purcell provided an unsecured $50,000 loan to Kleas, due in one payment.

After Kleas defaulted on all eleven payments, Prokop-Purcell hired appellee Carp, an attorney, to begin foreclosure proceedings. Carp sent Kleas a letter on January 27, 2011, stating that Kleas was in default and that, if he did not cure the default within twenty days, Prokop-Purcell would seek to enforce her rights under the loan documents.[2] Twelve days after sending the notice letter, on February 8, 2011, Carp sent to Kleas a "Notice of

---

[1] This appeal was transferred from the Third Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

[2] The letter stated that, "[i]n accordance with federal and Texas laws regarding fair debt collections," the "indebtedness will be assumed to be valid" if Kleas did not dispute the validity of the debt within thirty days. The letter further explained that, if Kleas notified Carp within that thirty-day period that he was disputing the validity of the debt, Carp would "obtain a verification of the indebtedness and will mail that verification to you."

Trustee's Sale" stating that the properties at issue would be offered for sale at a public auction at the Bastrop County Courthouse on March 1, 2011.

On February 24, 2011, Kleas filed suit against Prokop-Purcell alleging breach of contract and improper foreclosure. The lawsuit alleged that foreclosure was improper because, among other things, Prokop-Purcell did not provide him with proper notice or opportunity to cure the default.[3] Kleas contended that he was in the process of refinancing the properties and that the refinancing, if closed, would have cured the default and obviated the need for a foreclosure sale; but that the foreclosure notice clouded the properties' titles and precluded refinancing, thereby causing him to suffer irreparable harm. The suit requested damages, temporary and permanent injunctions against the foreclosure, and attorney's fees.

The trial court granted a temporary restraining order enjoining the foreclosure sale, and it set a hearing for March 10, 2011, which was later postponed to April 7, 2011. Carp then sent another letter to Kleas notifying him of a new foreclosure sale date of April 5, 2011. The trial court held an emergency hearing on March 30, 2011 regarding this new foreclosure sale date. At the hearing, the parties entered into a Rule 11 agreement under which Prokop-Purcell agreed to "cease the foreclosure sale currently scheduled for April 5, 2011" and Kleas agreed to provide Prokop-Purcell with certain information regarding encumbrances on the properties. The Rule 11 agreement also provided that "the

---

[3] In particular, Kleas argued that, in the event of default, the deeds of trust at issue allowed him thirty days within which to cure the default, contrary to Carp's January 27 letter which gave him twenty days. Kleas further alleged that, in the event the default cannot be fully cured within thirty days, the deeds of trust allow him an additional "reasonable period of time" of up to ninety days to cure or remedy the default, provided that he began the cure before the initial thirty-day period expired and "continue[d] to proceed with diligence to complete the cure or remedy." The lawsuit concluded that, "[p]ursuant to the Deeds of Trust at issue, in regards to a default, [Kleas] would have a total of one hundred twenty (120) days from the date of the first notice of default before any foreclosure can legally proceed."

Temporary Restraining Order currently in effect will remain so until further order from this Court."

Carp sent another notice of default to Kleas on April 1, 2011; and eleven days later, Carp filed and posted two notices of foreclosure with respect to the properties at issue.

On June 6, 2011, Kleas filed an amended petition that added Prokop-Purcell's daughter Deborah Ruth Prokop Cecil and Carp as defendants. The amended petition added claims that the defendants (1) tortiously interfered with two contracts that Kleas had entered into with commercial developers, (2) tortiously interfered with prospective business relations with two other entities, and (3) tortiously disparaged his business. The amended petition also asked the trial court to assess sanctions against Prokop-Purcell, Cecil, and Carp for filing the notices of foreclosure, which Kleas contended were frivolous pleadings. See TEX. CIV. PRAC. & REM. CODE ANN. ch. 10 (West, Westlaw through 2013 3d C.S.) ("Sanctions for Frivolous Pleadings and Motions").

Subsequently, on September 2, 2011, Kleas settled his claims against Prokop-Purcell and later non-suited his claims against her and Cecil. Carp remained as a defendant.

Kleas then filed three additional amended petitions, the last two of which added Prokop-Purcell's son Michael Prokop and Carp's law firm Herzog & Carp, P.C. ("Herzog & Carp") as defendants. Kleas's live petition, his fourth amended petition dated August 29, 2012, contained additional factual assertions, including allegations that: (1) the defendants undertook an "obvious ploy to seize control of the Properties" by offering to purchase the note held by the properties' first lienholder, a bank, without disclosing their identity to the bank; (2) the defendants "called Austin Title Company to shut down the

4

sale transaction that was intended, yet again, to pay the second liens"; and (3) the defendants "obstruct[ed] the discovery processes that would have revealed their wrongdoing in detail." The fourth amended petition alleged the following causes of action against all three appellees: (1) fraud, (2) breach of the deeds of trust and promissory notes, (3) wrongful foreclosure, (4) slander of title, (5) tortious interference with existing contracts, (6) tortious interference with prospective business relations, (7) business disparagement and defamation, (8) breach of a Rule 11 agreement, (9) promissory estoppel, (10) declaratory judgment, (11) negligence and gross negligence, (12) negligent management and supervision, and (13) negligent misrepresentation. The petition also retained the request for sanctions for frivolous pleadings. The petition alleged that Kleas had suffered over $4 million in damages as a result of the defendants' actions.

On September 6, 2012, Prokop filed a "special motion to dismiss" in which he asked the trial court to dismiss Kleas's claims pursuant to the Texas Citizens' Participation Act ("TCPA"). *See id.* ch. 27 (West, Westlaw through 2013 3d C.S.) (providing generally that a defendant may move to dismiss a claim that is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association" and that the trial court shall grant such motion unless the plaintiff "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question"). The trial court granted the motion in part after a hearing and ordered that Kleas pay $4,000 in attorney's fees to Prokop.

Carp filed a motion to dismiss and for traditional summary judgment on October 10, 2012, contending that Kleas's claims fail as a matter of law in part due to the doctrine of qualified immunity. *See, e.g., James v. Easton*, 368 S.W.3d 799, 802 (Tex. App.—

Houston [14th Dist.] 2012, no pet.) (noting that attorneys have "qualified immunity" from civil liability with respect to non-clients for actions taken in connection with representing a client in litigation). The motion was accompanied by evidence, including an affidavit by Carp. Prokop filed a motion for no-evidence summary judgment on November 7, 2012, alleging that "adequate time for discovery has passed" and asserting that Kleas's various claims were supported by no evidence.[4] On November 27, 2012, Carp also filed a motion for no-evidence summary judgment. A hearing on the summary judgment motions was set for December 17, 2012.

Ten days prior to the hearing date, Kleas filed a motion for continuance, claiming that the parties "have commenced and are in the process of completing discovery in this cause." The motion asserted that "[d]uring discovery, [Kleas] has uncovered several facts that have a high potential to lead to admissible facts that will prove [Kleas]'s case." It further alleged that "the time is not ripe for a ruling on qualified immunity" because Kleas has not "completed its fact discovery." The trial court denied the motion without a hearing. Subsequently, Kleas filed an affidavit in response to appellees' summary judgment motions. After the December 17, 2012 hearing, the trial court granted Carp's and Prokop's summary judgment motions.

Appellees' requests for sanctions remained pending, and an evidentiary hearing on

---

[4] Prokop's motion for no-evidence summary judgment argued specifically that: (1) the fraud and negligent misrepresentation claims fail because there is no evidence that Prokop ever communicated to Kleas; (2) the breach of contract, promissory estoppel, and declaratory judgment claims fail because there is no evidence that Kleas and Prokop were in privity of contract; (3) the wrongful foreclosure claim fails because there is no evidence that Prokop ever attempted foreclosure or owned an interest in the properties; (4) there is no evidence of slander of title; (5) the tortious interference claims fail because there is no evidence that Prokop "had any contract with any of the named companies"; (6) there is no evidence that Prokop made any disparaging or defamatory statements about Kleas; (7) the negligence claims fail because there is no evidence that Prokop "was ever a lender" to Kleas; and (8) the negligent management and supervision claim fails because there was no evidence that Prokop was ever represented by Carp or had any control over Carp.

that matter was held on January 8, 2013. Kleas did not appear at the hearing but was represented by counsel. After hearing testimony, the trial court granted the sanctions motions, finding that all of Kleas's claims were brought in bad faith and for the purpose of harassment.[5] The trial court subsequently rendered final judgment, based on its prior summary judgment rulings, that Kleas take nothing from his claims against Carp and Prokop, and further stating as follows:

> With respect to the claims for sanctions, after taking into account all five volumes of the case files, all conduct, evidence and exhibits discussed at all previous hearings, and all of the evidence and argument offered at the evidentiary hearing on January 8, this Court finds as follows:
>
> 1. [Kleas's counsel] has engaged in no wrongful behavior, improper conduct, or otherwise sanctionable actions, no such allegation has been made, and the Court finds no wrongful conduct by [Kleas's counsel].
>
> 2. The Court finds that the wrongful activity that has taken place is the doing of [Kleas].
>
> 3. The Court finds that every single one of the fourteen causes of action alleged against Defendants [Carp], [Herzog & Carp], and [Prokop] are frivolous, baseless, [and] groundless[.]
>
> 4. The Court finds that every allegation made by [Kleas] against these three Defendants has been demonstrated to be groundless, baseless, worthless, and frivolous.
>
> 5. The Court finds that every allegation made by [Kleas] against the Defendants was filed in bad faith and for purposes of harassment.
>
> 6. The Court finds that Texas Rule of Civil Procedure 13 and Chapter 10 of the Civil Practice and Remedies Code warrant the imposition of sanctions against [Kleas] for improper behavior.

The order provided that Kleas shall pay to Carp and Herzog & Carp the amount of $102,000 for "reasonable attorney[']s fees necessarily expended for defense of the claims

---

[5] Kleas filed an objection to the entry of judgment and a motion for new trial, both of which were denied by operation of law. *See* TEX. R. CIV. P. 329b(c).

7

in this Court." The order further provided that Kleas shall pay to Prokop the amount of $25,000 "for reasonable attorney[']s fees necessarily expended in this Court," minus the $4,000 in fees previously awarded. As to each of Carp and Prokop, Kleas was ordered to additionally pay $40,000 "for responding to the already perfected appeal in the Court of Appeals," an additional $10,000 if a petition for review is filed in the Texas Supreme Court by any party, and an additional $30,000 if the Texas Supreme Court grants review.[6] The trial court later rendered two additional sets of findings of fact and conclusions of law, each dated March 21, 2013; the first set contained 28 factual findings and five legal conclusions and the second set contained 167 factual and legal findings. This appeal followed.

## II. DISCUSSION

### A. Motion for Continuance

By his first issue, Kleas contends that the trial court erred in denying his motion to continue the December 7, 2012 summary judgment hearing.

When a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance. *Tenneco Inc. v. Enter. Products Co.*, 925 S.W.2d 640, 647 (Tex. 1996). A trial court may continue a hearing on a motion for summary judgment if it appears from the evidence presented that the party opposing the motion "cannot for reasons stated present by affidavit facts essential to justify his opposition." TEX. R. CIV. P. 166a(g). When reviewing a trial court's order denying a

---

[6] The trial court rendered an amended final judgment on February 27, 2013, reflecting that Kleas had since amended its corporate name to become "Jackson Purcell JV, Inc."

8

motion for continuance, we consider whether the trial court committed a clear abuse of discretion on a case-by-case basis. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* When deciding whether a trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery, we consider the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Id.* In the summary judgment context, it is generally not an abuse of discretion to deny a motion for continuance if the party moving for a continuance has received 21 days' notice of the hearing as required by Rule 166a(c). *Carter v. MacFadyen*, 93 S.W.3d 307, 310 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *see* TEX. R. CIV. P. 166a(c). A party seeking more time to oppose a summary judgment motion must describe the evidence sought, explain its materiality, and show the due diligence used to obtain the evidence. *Carter*, 93 S.W.3d at 310 (citing TEX. R. CIV. P. 166a(g), 251, 252[7]). The movant must

---

[7] Texas Rules of Civil Procedure 251 and 252 provide:

> No application for a continuance shall be heard before the defendant files his defense, nor shall any continuance be granted except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law.

TEX. R. CIV. P. 251.

> If the ground of such application be the want of testimony, the party applying therefor shall make affidavit that such testimony is material, showing the materiality thereof, and that he has used due diligence to procure such testimony, stating such diligence, and the cause of failure, if known; that such testimony cannot be procured from any other source; and, if it be for the absence of a witness, he shall state the name and residence of the witness, and what he expects to prove by him; and also state that the continuance is not sought for delay only, but that justice may be done; provided that, on a first application for a continuance, it shall not be necessary to show that the absent testimony cannot be procured from any other source.

TEX. R. CIV. P. 252.

show why the continuance is necessary; conclusory allegations are not sufficient. *Id.* (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520–22 (Tex. 1995)); *see* Tex. R. Civ. P. 252.

Kleas's motion, which was verified by counsel, argued that certain witnesses—including Prokop, Prokop-Purcell, and Prokop Cecil—had not yet been deposed but that the parties "have agreed to a schedule of depositions."[8] The motion argued that "certain fact[s] can exist that can destroy" an attorney's qualified immunity and that Kleas "has a right to discover the nature of the actions taken with reference to foreclosure and to the actions taken by [Carp] and Herzog & Carp with regard to the failure of the former Defendants to perform under the terms [of] a Rule 11 [agreement] reached in this matter." The motion argued that Kleas "has a right to determine if facts exist[] that would cause the doctrine of qualified immunity to not apply" and that, "[u]ntil [Kleas] has completed its fact discovery, the Court will not be in a position to determine whether such facts exist[] and are or are not in issue."

We cannot conclude that the trial court abused its discretion by denying this motion. Although this was the first motion for continuance filed by Kleas with regard to his claims against the appellees,[9] it came over four years after Kleas initially filed suit and

---

[8] The record contains two Rule 11 agreements, one dated August 6, 2012 and one dated November 12, 2012, regarding discovery scheduling. The August agreement states, among other things, that Kleas's counsel and Prokop's counsel agreed to take the depositions of Prokop and Prokop-Purcell on September 11, 2012. The November agreement states, among other things, that Kleas's counsel and Carp's counsel agreed to take Prokop's deposition on November 14, 2012. The record does not reveal why those depositions did not take place as scheduled. Kleas asserts on appeal that "[t]he parties subsequently agreed" to reschedule those depositions for after December 17, 2012. Prokop asserts on appeal that Kleas "failed to abide by his own Rule 11 Agreement." We express no opinion on the matter except to note that, according to the record, Prokop was eventually deposed on January 7, 2013.

[9] Kleas asserts that the motion was the first motion for continuance that he filed in the case. In fact, Kleas's prior counsel filed an agreed motion for continuance on March 8, 2011, asking to continue the hearing on the injunction proceedings against Prokop-Purcell.

over two years after Carp was first named as a defendant. Carp filed his summary judgment motions more than sixteen months after he was first named as a defendant, and Kleas does not dispute that he was given the requisite 21 days' notice of the hearing.[10] *See* TEX. R. CIV. P. 166a(c); *Joe*, 145 S.W.3d at 161. Moreover, Kleas's motion did not discuss whether he had exercised due diligence in attempting to procure the testimony of the witnesses yet to be deposed. *See* TEX. R. CIV. P. 252; *Joe*, 145 S.W.3d at 161; *Carter*, 93 S.W.3d at 310.

Kleas cites *Laughlin v. Bergman*, in which the First Court of Appeals found that the trial court abused its discretion, requiring a new trial, by denying the plaintiff's motion to continue a summary judgment hearing in a legal malpractice case. 962 S.W.2d 64, 66 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). *Laughlin* is distinguishable. There, the record included an affidavit by the plaintiff's counsel stating that "he had made numerous attempts to schedule [the defendant]'s deposition to no avail," thereby evidencing his due diligence. *Id.* Moreover, in *Laughlin* the plaintiff sought a continuance in order to depose the defendant, who was "the attorney blamed for the malpractice" and "is also in possession of the files that [the plaintiff] asserts will evidence this malpractice." *Id.* It was therefore "abundantly apparent" to the court of appeals that the ability to depose the defendant and review the files was "absolutely critical" to the plaintiff's case. *Id.* Here, on the other hand, though Kleas's motion asserted generally that "certain fact[s] can exist that can destroy" appellees' defenses, he did not specify what evidence he expected to

---

[10] We note that the November 12, 2012 Rule 11 agreement—which was drafted by Kleas's counsel and signed by Kleas—states that Carp and Herzog & Carp agreed to "not proceed with their Motion for Summary Judgment . . . until on or after December 17, 2012." Moreover, in a letter to the trial court judge written after the continuance was denied, Kleas's counsel stated in part: "With some difficulty, we have finalized, filed and served our papers in opposition to defendants' motions for summary judgment and are ready for argument on Monday, December 17 at 1:30."

obtain from the depositions of Prokop, Prokop-Purcell, and Prokop Cecil, or how that evidence would support his various causes of action against Carp and Prokop. *See Carter*, 93 S.W.3d at 310.

We overrule Kleas's first issue.

**B.    Summary Judgment**

Kleas argues by his second issue that his affidavit was sufficient to defeat appellees' summary judgment motions.

**1.    Standard of Review**

We review summary judgments de novo. *Joe*, 145 S.W.3d at 156; *Nalle Plastics Family L.P. v. Porter, Rogers, Dahlman & Gordon, P.C.*, 406 S.W.3d 186, 199 (Tex. App.—Corpus Christi 2013, pet. denied). We take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Joe*, 145 S.W.3d at 157.

In advancing a traditional motion for summary judgment, the movant has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Joe*, 145 S.W.3d at 157. An issue of fact is raised if more than a mere scintilla of evidence is produced. *See, e.g., City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). Evidence is less than a scintilla is if it is "so weak as to do no more than create a mere surmise or suspicion that the fact exists." *Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010). Evidence is more than a scintilla if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011).

A motion for no-evidence summary judgment must establish that there is no evidence of at least one essential element of the plaintiff's cause of action. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam). The burden of producing evidence is entirely on the plaintiff; the defendant has no burden to attach any evidence to the motion, and if the plaintiff produces evidence raising a genuine issue of material fact, summary judgment is improper. TEX. R. CIV. P. 166a (i). All that is required of the plaintiff is to produce more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element. *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003).

## 2. Applicable Law

To promote zealous representation, courts have held that an attorney has "qualified immunity" from civil liability with respect to non-clients for actions taken in connection with representing a client in litigation. *James*, 368 S.W.3d at 802; *Alpert v. Grain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Under this doctrine, an attorney is generally immune from personal liability stemming from conduct that the attorney "engages in as part of the discharge of his duties in representing a party in a lawsuit." *Bradt v. West*, 892 S.W.2d 56, 72 (Tex. App.—Houston [1st Dist.] 1994, writ denied)[11]; *see McCamish, Martin, Brown & Loeffler v. F.E.*

---

[11] In *Bradt v. West*, the First Court of Appeals explained the policy rationale for this rule:

The public has an interest in loyal, faithful and aggressive representation by the legal profession. An attorney is thus charged with the duty of zealously representing his clients within the bounds of the law. In fulfilling this duty, an attorney has the right to interpose any defense or supposed defense and make use of any right in behalf of such client or clients as the attorney deems proper and necessary, without making himself subject to liability in damages. Any other rule would act as a severe and crippling deterrent to the ends of justice for the reason that a litigant might be denied a full development of his case if his attorney were subject to the threat of liability for defending his client's position to the best and fullest extent allowed by law, and availing his client of all rights to which he is

13

*Appling Interests*, 991 S.W.2d 787, 792 (Tex. 1999) ("At common law, the rule of privity limits attorney liability to third parties. . . . The general rule is that persons who are not in privity with the attorney cannot sue the attorney for legal malpractice. . . . In practical terms, this privity requirement means that an attorney is not liable for malpractice to anyone other than her client.") (citations omitted). This qualified immunity focuses on the type of conduct in which the attorney engages rather than on whether the conduct was meritorious. *Byrd v. Vick, Carney & Smith LLP*, 409 S.W.3d 772, 780 (Tex. App.—Fort Worth 2013, pet. granted). Thus, an attorney cannot be held liable to a third party for conduct that requires "the office, professional training, skill, and authority of an attorney." *Id.* (quoting *Miller v. Stonehenge/Fasa-Tex., JDC, L.P.*, 993 F. Supp. 461, 464 (N.D. Tex. 1998) (order)). "Incorrect, meritless, and even frivolous conduct is not actionable if it satisfies this standard." *Id.* (quoting *Miller*, 993 F. Supp. at 464).

An attorney's protection from liability is not boundless, however. *Id.* An attorney can be held liable by a third party for actions that are not part of the discharge of his duties to his client. *See Alpert*, 178 S.W.3d at 406; *Bradt*, 892 S.W.2d at 71. If a lawyer participates independently in fraudulent activities, his action is "foreign to the duties of an attorney." *Alpert*, 178 S.W.3d at 406; *see Sacks v. Zimmerman*, 401 S.W.3d 336, 340 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *see also Poole v. Houston & T.C. Ry.*, 58 Tex. 134, 137 (1882) (holding that attorneys acting on behalf of their clients are not shielded from liability for their fraudulent conduct because fraudulent acts are "entirely foreign to the duties of an attorney"). In other words, the law does not provide absolute

---

entitled.

892 S.W.2d 56, 71 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (citations omitted).

immunity for every tort committed by a lawyer that may be tangentially related to his professional role or which may occur during litigation. *Byrd*, 409 S.W.3d at 780; *see Bradt*, 892 S.W.2d at 71–72. By way of extreme example, an attorney who assaults the opposing party or lawyer during trial could be held liable for that act. *Byrd*, 409 S.W.3d at 780.

The attorney's qualified immunity generally applies even if conduct is wrongful in the context of the underlying lawsuit. *Alpert*, 178 S.W.3d at 405. For example, a third party has no independent right of recovery against an attorney for filing motions in a lawsuit, even if frivolous or without merit, even though such conduct may be sanctionable or contemptible as enforced by the statutory or inherent powers of the court. *Id.* (citing *Bradt*, 892 S.W.2d at 72); *see also Sacks*, 401 S.W.3d at 343 (holding that if the plaintiff "had any evidence that opposing counsel were abusing the discovery process, discovery sanctions would be available to her" but that opposing counsel were nonetheless entitled to immunity). If an attorney's conduct violates his professional responsibility, the remedy is public, not private. *Byrd*, 409 S.W.3d at 780.

### 3. Evidence

Carp's affidavit, which was attached to his motion for traditional summary judgment, stated in part as follows:

> I have never had any financial interest in the real property at issue or the transaction at issue. My only financial interest was the legal fees I would make by representing my clients in this case. I never had a contingent fee in this case. Before I was hired I did not have any knowledge of Mr. Kleas, his company, or any of the transactions at issue. All actions which I took related to this case arose from my attorney-client relationship [with Prokop-Purcell]. . . .
>
> I have never done anything to intentionally, maliciously, or gratuitously harm Mr. Kleas or his company. I have never done anything intended or designed to interfere with, obstruct, or delay any financing or re-financing by Mr. Kleas

15

or his company relating to the property in issue or any other property he owns. I have tried to get Mrs. Prokop-Purcell paid all the money she was owed on the three promissory notes in dispute. My efforts to get Mrs. Prokop-Purcell paid in full did not involve any intent to harm, damage, or injure Mr. Kleas, his company, or any property they owned. I certainly intended to compel the company to pay what they owed: beyond that I had no intent to require them to do anything else. I did nothing beyond providing legal services to my client. No conduct of mine related to this case was for my own benefit or outside the scope of my legal representation of her.

Kleas's affidavit, the only summary judgment evidence that Kleas produced in response to the summary judgment motions, stated in its entirety as follows:

My name is John Kleas. I am over the age of eighteen years and am competent to make this affidavit. I am also President of the John Kleas Co., Inc. and am authorized to make this affidavit on behalf of the John Kleas Co., Inc. ("Plaintiff"). I have never been convicted of a felony or a crime involving moral turpitude. I have personal knowledge of the facts stated in this affidavit and they are true and correct.

Plaintiff has previously filed Fourth Amended Petition which is attached to this Affidavit as Exhibit A and incorporated into this Affidavit for all purposes. I am the President of the Plaintiff. I have personal knowledge of the facts contained in the Plaintiff's Fourth Amended Petition and the facts contained therein are true and correct. The Plaintiff purchased several tracts of land in Bastrop County which came to be known as the Purcell Tract and the Jackson Square Tract[] (collectively called "the disputed tracts").

In February 2011, [Prokop] and [Carp] initiated a series of actions that prevented Plaintiff from completing the development of the disputed tracts for sale as retail pad sites. Specifically, Defendant Carp initiated foreclosure proceedings to foreclose on the disputed tracts which were the security for two promissory notes owed to [Prokop-Purcell]. The procedure followed by Defendant Carp to foreclose on the tract were not consistent with the notice and cure provisions of the Deed of Trust.

Unknown to Plaintiff, Robert Leffingwell, a real estate broker doing business in Bastrop, Texas, delivered to Defendant Carp a letter dated December 10, 2010 outlining a number of options for acquisition or use of the disputed tracts in the event of foreclosure. A copy of the December 10, 2010 letter is attached to this Affidavit as Exhibit B and incorporated into this Affidavit for all purposes. In point of fact, this letter was delivered to Defendant Carp two month[s] prior to the first notice of foreclosure being issued.

On January 27, 2011, Carp issued a Notice [] to Plaintiff of a proposed non-judicial foreclosure sale of the disputed tracts on February 8, 2011. A copy

16

of the January 27,2011 letter from Defendant Carp is attached to this Affidavit as Exhibit C and incorporated into this Affidavit for all purposes. Prior to beginning foreclosure proceedings, Defendant Carp contacted the first lien holder, Noble Capital, in an attempt to gain information regarding the payoff amount for the first lien and whether that lien could be purchased at a discount. A copy of a March 28, 2011 statement written by Rodney Navarro is attached to this Affidavit as Exhibit D and incorporated into this Affidavit for all purposes. Defendant Carp began foreclosure proceedings against Plaintiff, even though Defendant was fully aware that Plaintiff was in the process of selling several pad sites. A copy of the contracts regarding the proposed sales are attached to this Affidavit as Exhibits E and F and incorporated into this Affidavit for all purposes.

After several unsuccessful attempts to foreclose on the disputed tracts, and two court hearings, the Plaintiff and the then-defendants entered into a written Rule 11 Agreement intended to bring this litigation to an end. A copy of the Rule 11 Agreement is attached to this Affidavit as Exhibit G and incorporated into this Affidavit for all purposes. Despite the agreement of all parties to the litigation, the Rule 11 Agreement was not performed according to its terms. The Plaintiff secured financing for the purpose of performing under the terms of the Rule 11 Agreement. Defendants Prokop and Carp's actions prevented the finalization of several sales transactions which remained pending the completion of Plaintiff's refinancing. The actions were consistent with the purpose of taking the disputed tracts from the Plaintiff and completing the strategy outlined in the December 10, 2010 letter from Robert Leffingwell. At the time of the breach of the Rule 11 Agreement, the Plaintiff was fully capable of carry[ing] out its terms and capable of fully paying the notes owed to [Prokop-Purcell]. A copy of the HUD 1 Statement scheduling a November 10, 2011 closing is attached to this Affidavit as Exhibit H and incorporated into this Affidavit for all purposes.[12]

The record does not contain any exhibits to Kleas's affidavit.

---

[12] Carp filed formal objections to Kleas's affidavit on the grounds that it is "unauthenticated hearsay," contains facts "beyond the personal knowledge" of the affiant, and contains improper legal opinions and conclusions. Carp's formal objections asked the trial court to "rule Exhibits 7 and 8 inadmissible" and to rule "the selected portions of [Kleas's] affidavit inadmissible." The document did not otherwise refer to "Exhibits 7 and 8," however, and the parties neither explain this reference nor direct us to any location in the record where the "exhibits" may be found. In any event, on the day of the summary judgment hearing, the trial court rendered an order sustaining Carp's objections as to "Exhibits 7 and 8" and also stating that "[Kleas's] affidavit is accepted in part, rejected in part." The order did not state which parts of Kleas's affidavit were excluded, if any. For purposes of this opinion, we will assume that the entirety of Kleas's affidavit was admitted as summary judgment evidence.

**4.     Analysis**

Kleas, in his petition and affidavit, made the following specific factual allegations against Carp:  that he initiated foreclosure proceedings while knowing that Kleas "was in the process of selling several pad sites"; that he followed improper foreclosure procedure; that he issued a notice of a proposed non-judicial foreclosure sale; and that he contacted the first lienholder of the properties "in an attempt to gain information regarding the payoff amount for the first lien and whether that lien could be purchased at a discount."  Carp's affidavit established that each of these activities was undertaken in furtherance of his representation of Prokop-Purcell regarding the properties at issue.  Kleas's affidavit does nothing to refute that.   In particular, Kleas's affidavit does not show that Carp "participate[d] independently in fraudulent activities" which were not part of the discharge of his duties to Prokop-Purcell.  *See Sacks*, 401 S.W.3d at 340; *Alpert*, 178 S.W.3d at 406; *Bradt*, 892 S.W.2d at 71.  Kleas's affidavit is therefore insufficient to establish a fact issue as to whether Carp retained qualified immunity as to all of Kleas's causes of action.  *See Bradt*, 892 S.W.2d at 71.  We conclude that traditional summary judgment was proper as to Carp.[13]

As to Prokop, we find that no-evidence summary judgment was proper.  Kleas's affidavit—which, again, was the only evidence produced by Kleas in response to the no-evidence summary judgment motions—did not make any specific factual allegations against Prokop.  The affidavit summarily stated that "[Prokop] and [Carp] initiated a series of actions that prevented [Kleas] from completing the development of the disputed tracts

---

[13] Because traditional summary judgment in favor of Carp was proper, we need not determine whether his motion for no-evidence summary judgment was meritorious.  *See* TEX. R. APP. P. 47.1.

for sale as retail pad sites" and that "Prokop and Carp's actions prevented the finalization of several sales transactions which remained pending the completion of [Kleas]'s refinancing," but it did not explain what specific "actions" Prokop took that support the causes of action raised by Kleas. No more than a scintilla of evidence supporting those causes of action appears in the record; accordingly, the trial court did not err in granting summary judgment in favor of Prokop. *See Forbes, Inc.*, 124 S.W.3d at 172. Kleas's second issue is overruled.

## C.    Sanctions

Kleas's remaining three issues challenge the trial court's sanctions award. Kleas posits by his third issue that the sanctions order contains insufficient findings; by his fourth issue that the trial court erred in determining that all of his causes of action were "groundless, baseless, worthless, and frivolous"; and by his fifth issue that the amount of sanctions ordered was excessive.

### 1.    Adequacy of Findings

By his third issue, Kleas argues that the sanctions order does not comply with the particularity requirements of Texas Rule of Civil Procedure 13 and section 10.005 of the Texas Civil Practice and Remedies Code.

Rule 13 provides that an attorney's signature on an instrument filed with the court "constitutes a certificate" by the attorney "that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith" nor "groundless and brought for the purpose of harassment." TEX. R. CIV. P. 13. The rule further states that "[n]o sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order." *Id.* Section

19

10.001 of the civil practice and remedies code similarly provides that an attorney's signature on a pleading or motion "constitutes a certificate" that, among other things, "each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(2) (West, Westlaw through 2013 3d C.S.). Section 10.005 states that "[a] court shall describe in an order imposing a sanction under this chapter the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed." *Id.* § 10.005 (West, Westlaw through 2013 3d C.S.). We have observed that the particularity requirement imposed by chapter 10 and Rule 13 "serves several important purposes":

> First, it ensures that the trial court is held accountable and adheres to the standard of the rule. Second, it requires the trial court to reflect carefully on its order before imposing sanctions. Third, it informs the offending party of the particular conduct warranting sanction for the purpose of deterring similar conduct in the future. And fourth, it enables the appellate court to review the order in light of the particular findings made by the trial court.

*Rudisell v. Paquette*, 89 S.W.3d 233, 237 (Tex. App.—Corpus Christi 2002, no pet.) (citations omitted).

Kleas cites *Tarrant County v. Chancey*, in which the Fort Worth Court of Appeals reversed a sanctions order where the trial court merely found that the appellant's motion was filed "for the purposes of harassment, causing unnecessary delay, needles [sic] increase in the cost of litigating of Plaintiffs [sic] case, and for the purpose of denying Plaintiff access to relevant documents." 942 S.W.2d 151, 155 (Tex. App.—Fort Worth 1997, no writ). The court found that "[s]uch general findings are insufficient to satisfy the particularity requirements of Rule 13" because "[t]he court must specify, in its order, the

20

particular acts or omissions on which the sanctions were based." *Id.* (citing *Zarsky v. Zurich Mgmt., Inc.*, 829 S.W.2d 398, 399 (Tex. App.—Houston [14th Dist.] 1992, no writ)). Kleas also cites several other cases where sanctions orders have been reversed for lack of particularity. *See III Forks Real Estate, L.P. v. Cohen*, 228 S.W.3d 810, 818 (Tex. App.—Dallas 2007, no pet.) (sanctions order stated only that "Defendant's claims and causes of action brought against Plaintiffs and Third–Party Defendant in this cause are groundless and/or were brought in bad faith for the purposes of harassing Plaintiffs and Third–Party Defendant in violation of Rule 13 of the Texas Rules of Civil Procedure, as such claims and causes of action were, or should have been, fully litigated in a prior arbitration proceeding between the parties"); *Rudisell*, 89 S.W.3d at 237 (sanctions order stated only that "it appear[s] that the Request for Sanctions in Respondent's Response has merit"); *Jimenez v. Transw. Prop. Co.*, 999 S.W.2d 125, 130 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (sanctions order stated only that a pleading was filed "in violation of Rule 13" and that a paralegal "misrepresented facts to the court"); *Friedman & Assocs., P.C. v. Beltline Rd., Ltd.*, 861 S.W.2d 1, 3 (Tex. App.—Dallas 1993, writ dism'd by agr.) (sanctions order contained no findings).

Appellees do not dispute that the sanctions order rendered by the trial court in this case lacked the particularity required by Rule 13. Instead, Carp contends that Kleas waived the issue by failing to object to the lack of particularity in the sanctions order in either of its post-judgment motions; and both appellees assert that the failure of the sanctions order to comply with the particularity requirement is harmless error because the trial court filed two extensive sets of findings of fact and conclusions of law addressing the grounds for sanctions.

21

We agree with Carp that the issue has not been preserved for appellate review. *See Connell Chevrolet Co., Inc. v. Leak*, 967 S.W.2d 888, 895 (Tex. App.—Austin 1998, no pet.) (finding that appellant failed to preserve his appellate issue regarding the lack of particularity in a sanctions order because he failed to object at trial to the lack of particularity); *Land v. AT & S Transp., Inc.*, 947 S.W.2d 665, 667 (Tex. App.—Austin 1997, no writ) (same).[14]

Even if the issue were preserved, any error regarding the lack of particularity in the sanctions order would be harmless. In 1989, this Court held that the failure of a sanctions order to comply with the particularity requirements was harmless because "[t]he trial court did not obscure its reasoning at the hearing, and the situation has been adequately presented to us." *Powers v. Palacios*, 771 S.W.2d 716, 719 (Tex. App.—Corpus Christi 1989, writ denied); *see* TEX. R. APP. P. 44.1(a) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals."). A majority of Texas appellate courts that have considered the

---

[14] In *Rudisell*, this Court held that the appellant preserved his issue regarding lack of particularity in the sanctions order by filing a motion for new trial which argued that his motion was "legally supportable" and which "detailed the statutory evidence in support of his claim and asserted that his claim had merit." *Rudisell v. Paquette*, 89 S.W.3d 233, 236 (Tex. App.—Corpus Christi 2002, no pet.) (citing *West v. Maint. Tool & Supply Co.*, 9 S.W.3d 96, 109 (Tex. App.—Corpus Christi 2002, no pet.) (finding that appellant preserved his issue regarding lack of particularity in the sanctions order by filing a motion for new trial in which he "denie[d] that his claims constitute groundless pleadings" and "addresse[d] the evidence supporting his claims")). Here, Kleas's motion for new trial generally alleged that the trial court erred in assessing sanctions but did not detail or address any evidence which he believed supported his claims.

In any event, because this is a transfer case, we are required to apply the precedent of the transferor court—here, the Austin Court of Appeals—to the extent it differs from ours. TEX. R. APP. P. 41.3. Accordingly, pursuant to the Austin court's *Connell Chevrolet* and *Land* opinions, we conclude that the issue has not been preserved because it was not raised at trial. *See Connell Chevrolet Co., Inc. v. Leak*, 967 S.W.2d 888, 895 (Tex. App.—Austin 1998, no pet.); *Land v. AT & S Transp., Inc.*, 947 S.W.2d 665, 667 (Tex. App.—Austin 1997, no writ).

issue have agreed that the lack of particularity in a sanctions order may constitute harmless error, and have found that subsequently-rendered findings of fact and conclusions of law may be considered to satisfy the particularity requirement. *See Gaspard v. Beadle*, 36 S.W.3d 229, 239 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (finding no abuse of discretion where the sanctions order "did not list the particulars of the good cause" supporting sanctions, because "[i]n her findings, the trial judge specified the conduct upon which she was basing the sanctions"); *Univ. of Tex. at Arlington v. Bishop*, 997 S.W.2d 350, 356 (Tex. App.—Fort Worth 1999, pet. denied) ("While we do not condone the practice of using findings of fact and conclusions of law to satisfy section 10.005, we conclude that the findings and conclusions supplied the particulars lacking in the sanctions order . . . ."); *Campos v. Ysleta Gen. Hosp., Inc.*, 879 S.W.2d 67, 70 (Tex. App.—El Paso 1994, writ denied) (abating appeal to allow trial court to file findings of fact and conclusions of law stating particulars of good cause for sanction order); *but see Friedman & Assocs., P.C. v. Beltline Road Ltd.*, 861 S.W.2d 1, 3 (Tex. App.—Dallas 1993, writ dism'd by agr.) ("[A] trial court cannot avoid the clear directive of the rule by gratuitously making findings in separately filed findings of fact after a sanction order is entered and in effect.").[15]

The trial court in the instant case, after rendering its sanctions order, issued a total of two hundred numbered findings of fact and conclusions of law, including the following:

> 142. Having reviewed the affidavits filed with respect to summary judgment and heard oral testimony in support, and having no evidence that contradicts those claims, this Court finds that [Carp] never acted with intent to harm Kleas, never acted for [Carp]'s own interest, and never acted in violation of the disciplinary rules or Texas

---

[15] The parties have directed us to no cases from the Austin Court of Appeals, and we find none, addressing the issue of whether the lack of particularity in a sanctions order may constitute harmless error when separate findings of fact and conclusions of law are subsequently filed. *See id.*

23

laws. Instead, this Court finds [Carp] acted solely and exclusively in an effort to zealously represent and protect the interests of [Prokop-Purcell], his client, and to obtain payment of the funds owed to [Prokop-Purcell].

143. With respect to the claims of defamation and business disparagement, this Court finds no evidence that either [Carp] or [Prokop] ever said or did anything that was false with regard to Kleas. . . .

146. With respect to the claims of negligence, gross negligence, negligent management, negligent supervision, and negligent misrepresentation, this Court finds no evidence that either [Carp] or [Prokop] made any false representation to Kleas. . . .

147. . . . [T]his Court finds that no false or frivolous pleadings were filed by [Carp] or [Herzog & Carp]. . . .

149. This Court finds that [Carp] never improperly spoke with the first lien holder. . . .

150. . . . [T]he Court finds [Carp] acted in good faith and as competent counsel for [Prokop-Purcell] without malice and without ill intent. . . .

152. This Court finds that all fourteen causes of action alleged against [Carp], [Herzog & Carp], and [Prokop] were groundless, brought in bad faith, and brought for the purpose of harassment. No reasonable person could believe that the claims had any merit. In addition, the Court finds no evidence of a reasonable inquiry conducted in accordance with Rule 13 before the unfounded frivolous allegations were made.

153. This Court finds that there is no basis in law and no basis in fact for any of the causes of action alleged in this case against [Carp], [Herzog & Carp], and [Prokop]. There were no allegations for the creation, extension, modification, or reversal of any existing law.

154. This Court finds that thirteen of the causes of action alleged against [Carp] and [Herzog & Carp] were precluded by attorney qualified immunity. [Carp] never engaged in any independent fraudulent activities, any conspiracy to defraud, or conducted any fraudulent act outside the scope of his representation of [Prokop-Purcell]. . . .

156. . . . Since [Carp], [Herzog & Carp], and [Prokop] were not parties to the notes or deed of trust it is impossible for a legal theory to be properly stated against them for breach. . . .

24

157. This Court finds that the cause of action for wrongful foreclosure is factually impossible since no foreclosure ever occurred. . . .

158. This Court finds that [Carp] never filed any document in the real property records, wrote anything, or said anything that could possibly constitute a cloud on title or slandering of Kleas'[s] title. . . .

159. This Court finds, with respect to the tort[i]ous interference claim, [Carp] never acted for his own interest or the interest of his firm. [Carp] never acted to harm Kleas. [Carp] was justified in posting the property for foreclosure, privileged to post the property for foreclosure, and any claim against [Carp] or his firm was precluded by attorney qualified immunity.

160. This Court finds that the cause of action for tort[i]ous interference against [Prokop] had no factual or legal support. The only person he spoke with, Ms. Tracy Hendrix at the title company repeatedly indicated in sworn testimony that the phone call had no real effect upon her and certainly did not harm Kleas or title to the property. There is no evidence that [Prokop] did anything to harm Kleas. Instead, this Court finds that [Prokop] attempted to help Kleas in hopes that Kleas'[s] success would allow him to pay [Prokop]'s mother the money that was owed to [her].

161. This Court finds that the cause of action for defamation and business disparagement never had any factual support. There was no evidence presented that [Carp] or [Prokop] said anything false about Kleas. In addition, the claims against [Carp] and the firm were precluded by attorney qualified immunity.

162. . . . [Carp] and his firm were not parties to the Rule 11 Agreement and therefore cannot be liable for breach. The undisputed evidence . . . was that a third party bank destroyed the effectiveness of the Rule 11 Agreement. . . .

164. With respect to the claims for negligence, gross negligence, negligent management, negligent supervision and negligent misrepresentation, the Court finds [Carp] and [Herzog & Carp], together with [Prokop], owed no duty to Kleas; there was no false representation; Kleas never relied on anything [Carp] or [Prokop] did; and the claims against [Carp] and the firm were barred by attorney qualified immunity.

165. With respect to the claim of frivolous pleadings, the Court finds that none of the pleadings filed by [Carp] or [Herzog & Carp] were frivolous.

25

Although these findings were not contained in the actual order awarding sanctions, we conclude that any error in that regard is harmless because the trial court's comprehensive findings of fact and conclusions of law, including those listed above, fully apprised the parties and this Court of the bases of the trial court's decision to award sanctions.[16] *See* TEX. R. APP. P. 44.1(a); *Powers*, 771 S.W.2d at 719; *see also Gaspard*, 36 S.W.3d at 239; *Bishop*, 997 S.W.2d at 356; *Campos*, 879 S.W.2d at 70. Kleas's third issue is overruled.

### 2. Legal Conclusions

Kleas contends by his fourth issue that the trial court erred by concluding that all of his causes of action were "frivolous, baseless, groundless" and brought "in bad faith" and "for the purpose of harassment." In particular, he contends that the record contains evidence supporting his tortious interference and slander of title claims against Prokop.[17] Kleas points to testimony by Prokop at the hearing on his "special motion to dismiss" that Prokop called Tracey Hendrix, a representative of Austin Title Company, to ask whether "there was a closing fixing to take place by Kleas Company." Prokop testified that he "may have" told Hendrix that he and Cecil "filed the paperwork to foreclose" on the

---

[16] Kleas argues that the trial court's decision to enter findings after the sanctions had been awarded "runs contrary to one of the recognized purposes for including detailed findings in the sanctions order": i.e., that "it requires the trial court to reflect carefully on its order before imposing sanctions." *Rudisell*, 89 S.W.3d at 237. We agree, and for that reason, we do not condone the practice of entering sanctions findings after the sanctions award. *See Univ. of Tex. at Arlington v. Bishop*, 997 S.W.2d 350, 356 (Tex. App.—Fort Worth 1999, pet. denied). However, here, there is no indication that the trial court failed to reflect carefully on its sanctions order prior to rendering it. The trial court rendered its order only after a full evidentiary hearing at which all parties were represented. For the reasons stated herein, we do not believe that a trial court's failure to make sufficient findings in the sanctions order is necessarily harmful error. *See* TEX. R. APP. P. 44.1(a); *Powers v. Palacios*, 771 S.W.2d 716, 719 (Tex. App.—Corpus Christi 1989, writ denied).

[17] Kleas also argues by this issue that he did not have a "'reasonable opportunity for further investigation or discovery' with respect to the majority of [his] claims" against each of the appellees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(3) (West, Westlaw through 2013 3d C.S.). For the reasons cited in our discussion of Kleas's first issue, we disagree. In any event, whether or not Kleas *actually* had the opportunity to engage in full discovery is immaterial to an analysis of whether the claims raised in his pleadings were "*likely* to have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id.* (emphasis added).

properties at issue. According to Prokop, Hendrix replied by saying "Yes, we're suppose[d] to have [a closing]" and that "she was waiting on some pay-off figures." Kleas testified as follows at the same hearing: "[F]rom my standpoint, [Prokop] claimed he represented his sister and his family to the title company, for my assumption he represents facts and conclusions for the title company to react. Therefore, he blocked my closing." Kleas asserts that this testimony "support[s] a prima facie case of slander of title and tortious interference with existing contracts." *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77–78 (Tex. 2000) (stating that the elements of tortious interference with an existing contract are: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss"; and noting that "as an affirmative defense, a defendant may negate liability on the ground that its conduct was privileged or justified").

We review the imposition of sanctions under an abuse of discretion standard. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). We will reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Id.* To determine if the sanctions were appropriate or just, we examine whether there is a direct nexus between the improper conduct and the sanction imposed. *Id.*

For purposes of Rule 13, "groundless" means "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." TEX. R. CIV. P. 13. Generally, courts presume that pleadings and other papers are filed in good faith, and the party seeking sanctions bears the burden of overcoming that

27

presumption. *Low*, 221 S.W.3d at 614; *see* TEX. R. CIV. P. 13. Sanctionable conduct under chapter 10 includes signing a pleading with "any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation"; and signing a pleading which does not have evidentiary support nor "is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(1), (3).[18] Upon finding that a person has signed a pleading in violation of either Rule 13 or section 10, the court may impose sanctions against the party signing the pleading, the represented party, or both. *See id.* § 10.004(a) (West, Westlaw through 2013 3d C.S.); TEX. R. CIV. P. 13.

At the sanctions hearing, Carp testified that he has been a licensed attorney since 1981. In his career, he has done "almost exclusively civil work," and business litigation in particular. He became a partner in the firm of Herzog & Carp around early 2000, and he has been the president of the firm since its inception. At that time, he knew Cecil because her children were in some school activities with his children. Cecil introduced Carp to her mother, Prokop-Purcell, and Prokop-Purcell's husband. Carp began representing Prokop-Purcell and her husband in "a variety of different legal" matters. They hired Carp to help them in the instant dispute in late 2010.

---

[18] Conduct that is sanctionable under chapter 10 also includes signing a pleading with a legal contention that is not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *Id.* § 10.001(2). However, "[t]he court may not award monetary sanctions against a represented party for a violation of Section 10.001(2)." *Id.* § 10.004(d) (West, Westlaw through 2013 3d C.S.). We note that Kleas does not argue on appeal that the sanctions are improper pursuant to section 10.004(d).

Carp identified a five-page list of accusations drawn from Kleas's pleadings which he claimed to be groundless.[19] When asked on cross-examination whether the list of accusations showed malice or bad faith, Carp replied:

> They definitely represent bad faith. . . . Because I am just trying to represent my client and get what my client is entitled to under the law. Which is to have your client pay the money that he owes. And if he could pay the note, then he could have had the property and gone on and done whatever he wanted to with it.

Carp later stated:

> This case should have been over with when there was a settlement between my clients and [Kleas] and his company. And, instead, what [Kleas] and his company have done is to try and prolong the situation, try to waste judicial resources, try to waste resources, time, and effort of the people involved. And it's what . . . gives the legal profession sometimes a bad name. And if that's not dealt with appropriately, then I think it's only being encouraged.

Carp testified that, during the course of the dispute, Kleas was represented by no fewer than thirteen different attorneys at various times. He stated that, when a client "goes through . . . [thirteen] lawyers on a deal in the space of two years," that indicates "[t]hat there's probably a problem . . . [w]ith the client."

Harry Herzog, Carp's partner, testified that he filed an answer to Kleas's claims against Herzog & Carp around September 2011. Herzog stated that, "within a couple of weeks," Kleas filed a motion for sanctions to strike the firm's pleadings and enter default judgment against it for discovery abuse even though "without question no discovery had ever been sent to the law firm. None." He "didn't see any way" that the applicable law

---

[19] The list of accusatory language used by Kleas in his pleadings included: "stunning plethora of falsehoods"; "massive fraud"; "systematic annihilation of Kleas"; "distortions and contradictions"; "unrelenting campaign of foreclosure"; "lied"; "systematic, fraudulent scheme"; "outright deception"; "outrageous conduct"; "deceitful sham"; "malicious efforts to seize the properties"; "false pretense of debt collection"; "dereliction of duty"; "professional irresponsibility of an unprecedented order of magnitude"; and many others.

"could support striking of the pleadings of a law firm for discovery abuse when the law firm had never received any discovery to respond to." Herzog testified that this is "an example of bad faith and harassment." He conceded, however, that prior to the time he joined the case as counsel of record, there may have been a "good faith, legitimate, honest" discovery dispute.

Herzog further stated that he got no response from Kleas's counsel when he "offered them in various e-mails ten to twelve dates for our deposition," so he finally "noticed our depositions, ourselves" but neither Kleas nor his counsel showed up at the depositions. Herzog testified that this is "evidence of bad faith and malice" by Kleas and his counsel. He stated that he would put "90 percent or more of the blame" on Kleas and "approximately 10 percent of the blame" on Kleas's former attorneys.[20]

Herzog referred to the list of accusatory terms used by Kleas in his pleadings and stated: "[T]o make slander, after slander, after slander, after slander, and all of these horribly abusive allegations, cannot be in good faith, has to be in bad faith." Herzog stated that, when his law firm had been groundlessly accused in the past of committing fraud, his malpractice insurance premiums increased "600 percent." He stated:

> We've already had limits placed on what we can and cannot do as a law firm within our insurance coverage because of [Kleas's] lawsuit. We have a rider on our policy, we cannot take a real estate foreclosure. We can't post a piece of property for foreclosure anywhere in the State of Texas without violating our policy and l[o]sing our insurance coverage because of this lawsuit. So it's already affecting us. . . . [T]he fact that we owed no duty to [Kleas], and never actually foreclosed on any property, and we never did any of the things that we're accused of doing means nothing to the underwriter setting the rates on malpractice policies.

---

[20] Herzog testified that Herzog & Carp settled with one of Kleas's prior trial attorneys.

Prokop testified that he has never met Kleas and never had any conversations with him prior to the time Kleas filed suit against him. He was not involved in the litigation between Kleas and his mother; he was not a party to any deed of trust, promissory note, or Rule 11 agreement; he never filed anything in the public records concerning the properties at issue; and he never knew about any contracts regarding development on the properties. Prokop stated that, when he called Austin Title Company, he did not intend to stop any closing; rather, it was for "basically informational" purposes. When asked whether the claims against him were "brought just in bad faith, just to harass you," Prokop replied: "I would assume."

On cross-examination, Prokop conceded that, had his family carried through on the foreclosure and reacquired the properties, the bank was willing to loan his family funds sufficient to pay off the first lien. He disagreed, however, that the bank made this decision because of the extent of the improvements already made by Kleas on the property; instead, Prokop testified that the decision was "more based on the standing in the community that my family had had through the years, versus any equity built up in the property." Prokop agreed that, based on his experience, a title company will not approve a title if it cannot get a release from someone holding a prior lien; but he denied Kleas's accusation that he told Austin Title Company that he would not grant a release of his mother's lien. Prokop further denied that he even had the authority to refuse to release his mother's lien. He could not speak to what Kleas thought about the matter, however.[21]

Prokop's counsel testified that, at a deposition, Kleas threatened to sue "four or five other people" in the event his claims against Carp and Prokop are dismissed, and

[21] Kleas did not appear at the hearing.

31

that: "The only way that I can think that the Court could stop this man from carrying forward is to sanction him into the ground." Prokop's counsel stated that Kleas "knew what was in those pleadings because he said those same things" at his deposition.

We conclude that Carp and Prokop each met their burden to overcome the presumption that Kleas's pleadings were filed in good faith. *See* TEX. R. CIV. P. 13; *Low*, 221 S.W.3d at 614. The trial court's conclusion that all of Kleas's causes of action were groundless and brought in bad faith was supported by the evidence.[22] Specifically, the evidence supported a finding that the factual contentions in Kleas's pleadings did not have evidentiary support, nor were they "likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(3). The evidence also supported a finding that Kleas, rather than his attorney, was primarily responsible for bringing the claims. Finally, the sanctions were intended to deter Kleas from bringing further unsupported claims; therefore, there was a direct nexus between the improper conduct and the sanctions imposed. *See Low*, 221 S.W.3d at 614. Accordingly, the trial court did not abuse its discretion in awarding sanctions under Rule 13 and chapter 10. We overrule Kleas's fourth issue.

### 3. Amount of Sanctions

Kleas argues by his fifth issue that the sanctions award was excessive. "[I]n order to safeguard constitutional due process rights, a sanction must be neither unjust nor excessive." *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 363 (Tex. 2014). Sanctions under chapter 10 "must be limited to what is sufficient to deter repetition of the conduct

---

[22] Carp asserts on appeal that "[t]hese numerous pleadings set a sad new standard for the most frivolous, groundless, and malicious claims filed and sanctioned in Texas history." We express no opinion on the historical status of Kleas's pleadings, but merely hold that the trial court did not abuse its discretion in awarding sanctions in this case.

32

or comparable conduct by others similarly situated."  TEX. CIV. PRAC. & REM. CODE ANN.

§ 10.004(b).  In *Low*, the Texas Supreme Court stated that

> the determination of the amount of a penalty to be assessed under Chapter 10, which is not limited to attorney's fees and costs, should nevertheless begin with an acknowledgment of the costs and fees incurred because of the sanctionable conduct.  This provides a monetary guidepost of the impact of the conduct on the party seeking sanctions and the burdens on the court system.

221 S.W.3d at 621.[23]  The amount of sanctions "is limited by the trial court's duty to

exercise sound discretion."  *Id.* at 619.

---

[23] The *Low* Court stated that, in assessing the amount of sanctions, courts "should consider relevant factors" which may include the following factors identified by the American Bar Association:

    a.    the good faith or bad faith of the offender;

    b.    the degree of willfulness, vindictiveness, negligence, or frivolousness involved in the offense;

    c.    the knowledge, experience, and expertise of the offender;

    d.    any prior history of sanctionable conduct on the part of the offender;

    e.    the reasonableness and necessity of the out-of-pocket expenses incurred by the offended person as a result of the misconduct;

    f.    the nature and extent of prejudice, apart from out-of-pocket expenses, suffered by the offended person as a result of the misconduct;

    g.    the relative culpability of client and counsel, and the impact on their privileged relationship of an inquiry into that area;

    h.    the risk of chilling the specific type of litigation involved;

    i.    the impact of the sanction on the offender, including the offender's ability to pay a monetary sanction;

    j.    the impact of the sanction on the offended party, including the offended person's need for compensation;

    k.    the relative magnitude of sanction necessary to achieve the goal or goals of the sanction;

    l.    burdens on the court system attributable to the misconduct, including consumption of judicial time and incurrence of juror fees and other court costs;

    m.    the degree to which the offended person attempted to mitigate any prejudice suffered by him or her;

    n.    the degree to which the offended person's own behavior caused the expenses for which recovery is sought.

*Low v. Henry*, 221 S.W.3d 609, 620 n.5 & 621 (Tex. 2007) (citing American Bar Association, *Standards & Guidelines for Practice Under Rule 11 of the Federal Rules of Civil Procedure*, *reprinted in* 121 F.R.D. 101

At the sanctions hearing, Carp identified billing records for work on the claims against him from April 2012, after Kleas settled his claims against Prokop-Purcell, to January 2013. The records, introduced into evidence as Carp's Exhibit 13, showed that a total of $120,900 was billed for services and $494 for costs. Carp stated that around $35,000 had been billed for work defending Carp personally between the time Carp was named a defendant and the time Prokop-Purcell's claims settled, but those amounts were not included in the exhibit. Carp billed at $300 per hour and Herzog billed at $500 per hour. He agreed that the rates he and Herzog charged for their services are customary and reasonable. Carp stated that $40,000 would be a reasonable and necessary fee to defend against an appeal in this Court; $10,000 would be a reasonable and necessary fee to file a petition for review with the Texas Supreme Court; and $30,000 would be a reasonable and necessary fee if the supreme court grants review.

Herzog testified that he was first licensed to practice in 1982 and does primarily business litigation. He has been board certified in civil trial law since 1989 and in civil appellate law since 1992. He stated that he is a "longtime director and past officer and president of the Texas Association of Civil Trial and Appellate Specialists" and that he has previously "testified as an expert witness in fee disputes involving large law firms." Herzog stated that he has charged $500 per hour, billed in quarter-hour increments, throughout the time this case has been pending. He testified: "I believe that fee is the lowest fee in Harris County for any lawyer with my experience. And I believe it is below a reasonable fee. And I purposefully have it priced below a reasonable fee to help get work. Particularly in this disastrous economic climate."

_____

(1988)).

34

Herzog stated that around $35,000 included in Exhibit 13 was attributable to work done by Carp in Carp's defense. He agreed that, out of "fairness," Carp would not seek to recover those fees. He stated: "[W]hen you subtract all of [Carp]'s time out of . . . Exhibit 13, you should come to right at $90,000. The precise number is [$]89,969. But I round that off to [$]90,000." Herzog testified that, since the time the exhibit was prepared, he had spent 32.25 additional hours on the case.[24]

Herzog opined that $35,000 to $40,000 would be a reasonable and necessary fee for an appeal to this Court; $10,000 to $15,000 would be a reasonable and necessary fee if a petition for review is filed with the Texas Supreme Court; and $40,000 to $45,000 would be a reasonable and necessary fee if the supreme court grants review.

Prokop identified a bill from his attorney detailing the services provided defending against Kleas's suit. The bill showed 83 hours of work at a $300 hourly rate, for a total of $24,900, as well as $444.50 in costs. Prokop said he had to borrow money from his mother and sister so that he could pay roughly half of the bill; the rest remains unpaid.

Prokop's counsel testified that he has been a licensed attorney since 1975 and typically charges $300 to about $650 per hour. He stated that he charged Prokop $300 per hour and that the amount he charged is fair, reasonable, and necessary. He stated that reasonable and necessary appellate fees would be $40,000 for an appeal to the court of appeals, $10,000 for a petition for review in the Texas Supreme Court, and $30,000 if the supreme court grants review.

---

[24] At Herzog's $500 hourly rate, those additional hours cost $16,125. Adding that amount to the "precise number" as testified to earlier by Herzog, the total amount incurred would be $106,094.

35

Kleas argues that, because the attorneys testified that Kleas's counsel was about ten percent responsible, and because Carp and Prokop had already settled with Kleas's prior trial counsel, the award of "100 percent" of the requested fees is excessive. But sanctions under Rule 13 and chapter 10 are not limited to attorney's fees and costs. *Id.* at 621. Here, evidence showed that Carp spent dozens of hours, which would be billed at nearly $35,000, defending himself from Kleas's groundless claims. Although pro se litigants may generally not recover attorney's fees as sanctions, *see, e.g., Beasley v. Peters*, 870 S.W.2d 191, 196 (Tex. App.—Amarillo 1994, no writ) ("[A]n award of attorney's fees to an attorney appearing pro se as a litigant is not an appropriate sanction."), the trial court could have considered this evidence in determining what amount was appropriate in order to deter future sanctionable behavior.

Kleas further argues that, though Herzog testified that $500 is a reasonable hourly rate for an attorney with his experience in Harris County, he did not testify that $500 was a reasonable hourly rate in Bastrop County, which is where this litigation occurred. However, at least three courts of appeals have held that proof of the necessity or reasonableness of attorney's fees is not required when such fees are assessed as sanctions. *Gorman v. Gorman*, 966 S.W.2d 858, 868–69 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Stites v. Gillum*, 872 S.W.2d 786, 797 (Tex.App.—Fort Worth 1994, writ denied); *Glass v. Glass*, 826 S.W.2d 683, 688 (Tex. App.—Texarkana 1992, writ denied). Moreover, there was no evidence adduced that $500 is an unreasonable hourly rate.

Considering all of the evidence, including evidence that Herzog & Carp's malpractice insurance has already been affected by Kleas's suit, we conclude that the

trial court's award of sanctions was not excessive or unjust.  *See Nath*, 446 S.W.at 363.

Kleas's fifth issue is overruled.

### III. Conclusion

We affirm the judgment of the trial court.


DORI CONTRERAS GARZA,
Justice

Delivered and filed the
2nd day of April, 2015.